1   TIFFANY CHEUNG (CA SBN 211497)
    TCheung@mofo.com
2   LAUREN L. ERKER (CA SBN 291019)
    LErker@mofo.com
3   MORRISON & FOERSTER LLP
    425 Market Street
4   San Francisco, California  94105-2482
    Telephone:   415.268.7000
5   Facsimile:   415.268.7522

6   ERIN P. LUPFER (CA SBN 317994)
    ELupfer@mofo.com
7   MORRISON & FOERSTER LLP
    12531 High Bluff Drive
8   San Diego, California  92130-2040
    Telephone:   858.720.5100
9   Facsimile:   858.720.5125

10  Attorneys for Defendant
    APPLE INC.

11

12                  UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14                      SAN JOSE DIVISION

15

16  JAY BRODSKY, BRIAN TRACEY, ALEX          Case No. 5:19-CV-00712-LHK
    BISHOP and BRENDAN SCHWARTZ, each
17  on behalf of himself and all others similarly   **DEFENDANT APPLE INC.'S REPLY IN**
    situated,                                **SUPPORT OF MOTION TO DISMISS**
18                                           **FIRST AMENDED COMPLAINT**
                    Plaintiffs,
19                                           Date:    August 22, 2019
                                             Time:    1:30 p.m.
20          v.                               Ctrm:    8
                                             Judge:   Honorable Lucy H. Koh
    APPLE INC., a California corporation,
21
                    Defendant.
22                                           Amended Complaint Filed:  March  19, 2019

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

<div align="right">**Page**</div>

3   I.     INTRODUCTION ........................................................................................................... 1

4   II.    ARGUMENTS IN REPLY ............................................................................................. 1

      A.    Plaintiff Brodsky and the Proposed Class's CIPA, CFAA, and CCCL
5               Claims Are Time-Barred........................................................................................ 1

6          1.     The Continuing Violation and Continuous Accrual Doctrines Are
                      Inapplicable. ................................................................................... 2

7          2.     The Discovery Rule Does Not Postpone Claim Accrual. .......................... 4

8      B.    The Court Should Dismiss Plaintiffs' Common Law Claims Because They
               Fail to Allege Which State's Common Law They Are Asserting.......................... 5

9      C.    Plaintiffs Do Not Plausibly Plead Trespass to Chattels. ..................................... 6

10          1.     Plaintiffs Authorized 2FA. ........................................................................ 6

          2.     Plaintiffs' Trespass to Chattels Claim Also Fails Because They
11                      Cannot Allege Any Damage to Their Property........................................... 9

12          3.     Any Alleged Damage Was Not Caused by Apple. .................................. 10

      D.    Plaintiffs Fail to State a Wiretap Claim Under CIPA. ........................................ 11

13      E.    Plaintiffs' CFAA Claim Should Be Dismissed.................................................... 13

14          1.     Plaintiffs Fail to Allege Any "Access" By Apple That Was
                      "Without Authorization" or "Exceeded Authorization." ......................... 13

15          2.     Plaintiffs' Conclusory Allegation of Statutory Loss or Harm Is Also
16                      Fatal to Their CFAA Claim. .................................................................... 14

      F.    Plaintiffs' CCCL Claim Fails.............................................................................. 14

17      G.    The Court Should Dismiss Plaintiffs' Unjust Enrichment Claim. ....................... 15

18   III.   CONCLUSION............................................................................................................ 15

19

20

21

22

23

24

25

26

27

28

<div align="right">i</div>

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aryeh v. Canon Bus. Solutions,*
55 Cal. 4th 1185 1192 (2013) ........................................................................................2, 3, 4

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................................................................9

*Bank of New York Mellon v. Citibank, N.A.,*
8 Cal. App. 5th 935 (2017) ....................................................................................................15

*Baxter v. State Teachers' Retirement System,*
18 Cal. App. 5th 340 (2017) .....................................................................................................3

*Baugh v. CBS, Inc.,*
828 F. Supp. 745 (N.D. Cal. 1993) ..........................................................................................8

*Cover v. Windsor Surry Co.,*
No. 14-CV-05262-WHO, 2016 WL 520991 (N.D. Cal. Feb. 10, 2016).................................6

*Crowley v. CyberSource Corp.,*
166 F. Supp. 2d 1263 (N.D. Cal. 2001) .................................................................................12

*De Havilland v. FX Networks, LLC,*
21 Cal. App. 5th 845 (2018) ..................................................................................................15

*DocMagic, Inc. v. Ellie Mae, Inc.,*
745 F. Supp. 2d 1119 (N.D. Cal. 2010) .................................................................................14

*eBay, Inc. v. Bidder's Edge, Inc.,*
100 F. Supp. 2d 1058 (N.D. Cal. 2000) .............................................................................9, 10

*Ewing v. Encor Solar, LLC,*
No. 18-cv-2247-CAB-MDD, 2019 WL 277386 (S.D. Cal. Jan. 22, 2019) ...........................15

*Fayer v. Vaughn,*
649 F.3d 1061 (9th Cir. 2011)............................................................................................2 fn. 1

*Finney v. Ford Motor Co.,*
No. 17-CV-06183-JST, 2019 WL 79033 (N.D. Cal. Jan. 2, 2019) ...........................................5

*Fowler v. Wells Fargo Bank, N.A.,*
No. 17-CV-02092-HSG, 2017 WL 3977385 (N.D. Cal. Sept. 11, 2017)................................15

*Garrison v. Oracle Corp.,*
159 F. Supp. 3d 1044 (N.D. Cal. 2016) ...................................................................................3

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
　　61 Cal. 4th 988 (2015) ..............................................................................................15

*Hotmail Corp. v. Van$ Money Pie Inc.*,
　　No. C 98-20064 JW, 1998 WL 388389 (N.D. Cal. Apr. 16, 1998) .........................10

*Ileto v. Glock Inc.*,
　　349 F.3d 1191 (9th Cir. 2003).............................................................................10, 11

*In re Apple & ATTM Antitrust Litig.*,
　　2010 WL 3521965 ...............................................................................7, 10, 13, 14

*In re Facebook Internet Tracking Litig.*,
　　263 F. Supp. 3d 836 (N.D. Cal. 2017) ................................................................7, 11

*Intel Corp. v. Hamidi*,
　　30 Cal. 4th 1342 (2003) ..............................................................................................9

*Jamgotchian v. Slender*,
　　170 Cal. App. 4th 1384 (2009) ...................................................................................9

*Johnson v. Nissan N. Am., Inc.*,
　　272 F. Supp. 3d 1168 (N.D. Cal. 2017) .....................................................................6

*Lakeland Tours, LLC v. Bauman*,
　　No. 13CV2230-CAB-JMA, 2014 WL 12570970 (S.D. Cal. Feb. 11, 2014)............13

*LVRC Holdings LLC v. Brekka*,
　　581 F.3d 1127 (9th Cir. 2009)......................................................................... 11 fn. 4

*Marshall v. PH Beauty Labs, Inc.*,
　　No. CV 15-02101 DDP, 2015 WL 3407906 (C.D. Cal. May 27, 2015)....................5

*Mazza v. Am. Honda Motor Co.*,
　　666 F.3d 581 (9th Cir. 2012)......................................................................................6

*State of California ex rel. Metz v. CCC Info. Servs., Inc.*,
　　149 Cal. App. 4th 402 (2007) .....................................................................................3

*Ramos v. Capital One, N.A.*,
　　No. 17-CV-00435-BLF, 2017 WL 3232488 (N.D. Cal. July 27, 2017) .......... 11 fn. 5

*Ribas v. Clark*,
　　38 Cal. 3d 355 (1985) ..................................................................................... 11 fn. 4

*Spellis v. Lawn*,
　　200 Cal. App. 3d 1075 (1988)....................................................................................4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Van v. Language Line Servs., Inc.*,
    No. 14-CV-03791-LHK, 2016 WL 3143951 (N.D. Cal. June 6, 2016), *aff'd in
    part*, 733 F. App'x 349 (9th Cir. 2018)......................................................................................3

*Wu v. Sunrider Corp.*,
    No. 17-4825 DSF, 2018 WL 6266577 (C.D. Cal. May 22, 2018).............................................2

**Statutes**

Cal. Penal Code § 631(a) ..............................................................................................................12

1

## I.     INTRODUCTION

2

In response to Apple's motion to dismiss the entire FAC, Plaintiffs attempt to walk away

3

from the FAC, and assert for the first time in Opposition ("Opp."), entirely new factual

4

allegations and theories.  Plaintiffs do not dispute that they authorized their software updates, but

5

newly claim that this authorization somehow implicitly carved out authorization of 2FA because

6

2FA is an "additional feature" included in the software update.  Plaintiffs also now claim that

7

their authorization of the software update did not include authorization for 2FA if 2FA cannot be

8

disabled once installed.  But these novel assertions appear nowhere in the FAC and should not be

9

considered by the Court when evaluating the sufficiency of the FAC.  In any event, these new

10

assertions do not save Plaintiffs' claims.  Plaintiffs voluntarily installed the software update (or

11

created Apple IDs), thereby authorizing all features of the update (or Apple ID).  Plaintiffs also

12

float new types of alleged damages in the Opposition, including that their Apple devices were

13

"blocked 100% with no bandwidth" and that they were "dispossessed" of those devices even

14

though they do not contend that Apple caused them to lose possession of their devices.  None of

15

these new arguments can show that Plaintiffs were "damaged" under the claims at issue.

16

Similarly, the tolling doctrines Plaintiffs cite do not save Plaintiff Brodsky and the

17

putative class's statutory and unjust enrichment claims from the statute of limitations that expired

18

long ago.  And Plaintiffs' failure to put the Court and Apple on notice of which state's common

19

laws they are asserting is fatal to those claims.  The Court should dismiss the FAC in its entirety.

20

## II.     ARGUMENTS IN REPLY

21

### A.     Plaintiff Brodsky and the Proposed Class's CIPA, CFAA, and CCCL Claims Are Time-Barred.

22

23

Plaintiffs do not dispute the applicable statutes of limitations for their CIPA, CFAA, and

24

CCCL claims, but argue that Plaintiff Brodsky and the putative class's claims are not time-barred

25

for two reasons: (1) the continuing violation and continuous accrual doctrines apply and (2) their

26

claims accrued at a later time under the "discovery rule."  Neither argument has merit.

27

28

1

2

### 1. The Continuing Violation and Continuous Accrual Doctrines Are Inapplicable.

3

4

5

6

7

8

9

10

11

12

Plaintiffs conflate the continuing violation and continuous accrual doctrines, erroneously contending that under both, a new limitations period begins each time Plaintiffs use 2FA. (Opp. at 4:25-28.) Those two doctrines are distinct, however, and have different effects on a statute of limitations. Neither doctrine applies here. The continuing violation doctrine aggregates a series of wrongs and "treat[s] the limitations period as accruing for all of them upon commission or sufferance of the last of them." *Aryeh v. Canon Bus. Solutions*, 55 Cal. 4th 1185, 1192 (2013). The continuous accrual doctrine treats a series of wrongs "as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." *Id.* No allegation in the FAC warrants the use of either "continuing-wrong" accrual principle.

13

14

15

16

17

18

19

20

21

22

The continuing violation doctrine does not apply, as this is not a case "in which a wrongful course of conduct became apparent only through the accumulation of a series of harms." *Id.* at 1198. Plaintiffs claim that "[e]ach trigger of 2FA aggregates a series of wrongs or injuries" such that the limitations period accrues upon the last use of 2FA (Opp. at 5:18-20), but based on Plaintiffs' own allegations, Plaintiffs did not have to complete 2FA more than once to understand that it had been initiated. The first time Plaintiffs logged in after enabling 2FA, they allegedly were delayed "2-5 minutes" in accessing their device or account and discovered the need for a verification code to show they were the authorized user.[1] (FAC ¶ 17.) "Put simply, Plaintiff[s' alleged] harm is not the result of small harms that would not have been actionable on their own." *Wu v. Sunrider Corp.*, No. 17-4825 DSF, 2018 WL 6266577, at *7 (C.D. Cal. May 22, 2018).

23

24

25

26

The continuous accrual doctrine also cannot save Plaintiff Brodsky and the putative class's time-barred claims. Under continuous accrual, "[w]hen an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period." *Aryeh*, 55 Cal. 4th at 1199. Plaintiffs fail, however, to allege any continuing

27

28

---

[1] For purposes of this Motion, Apple accepts as true Plaintiffs' allegations, including the allegation that 2FA is required every time the phone is powered on. *See Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011). But Apple reserves its rights to dispute any of the facts alleged.

1   obligation owed by Apple to them, much less one similar to the monthly payments or bills that, as

2   in *Aryeh*, "California courts have found to be periodic, recurring obligations warranting

3   continuous accrual." *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1083 (N.D. Cal. 2016)

4   (Koh, J.) (declining to apply continuous accrual based on alleged restrictive hiring agreements

5   where plaintiff failed to allege any continuing duty and a duty not to collude with competitors to

6   restrict free competition is not the kind of duty necessitating continuous accrual).  Even the case

7   Plaintiffs rely on, *Baxter v. State Teachers' Retirement System*, 18 Cal. App. 5th 340, 378 (2017),

8   found that the doctrine is limited to claims where plaintiffs asserted rights, or challenges, to

9   periodic payments under contract or California statutes or regulations.

10       Moreover, continuous accrual does not apply where recurring injuries "'arose out of a

11   single transaction' that occurred before the limitations period." *Garrison*, 159 F. Supp. 3d at

12   1083 (quoting *see State of California ex rel. Metz v. CCC Info. Servs., Inc.*, 149 Cal. App. 4th

13   402, 418 (2007) ("*Metz*")).  So too here.  Plaintiffs allege 2FA was installed and remains installed

14   without their consent.  (*See, e.g.*, FAC ¶¶ 3, 19.)  Each required use of 2FA post-installation is not

15   a breach of a new obligation, (*see* Opp. at 5:14-17), but rather at most, additional alleged "harm"

16   arising from the initial, allegedly unauthorized installation.

17       Additionally, regarding their federal CFAA claim, Plaintiffs cite no authority establishing

18   that the continuous accrual doctrine applies to this claim.  *See Van v. Language Line Servs., Inc.*,

19   No. 14-CV-03791-LHK, 2016 WL 3143951, at *8 (N.D. Cal. June 6, 2016) (Koh, J.), *aff'd in*

20   *part*, 733 F. App'x 349 (9th Cir. 2018) (declining to apply continuous accrual to a federal claim

21   because it is a development of California law).  Indeed, Plaintiffs allege that the enabling of 2FA

22   "constituted a single act for purposes of the [CFAA]."  (FAC ¶ 75.)

23       Continuous accrual thus does not permit Plaintiff Brodsky and the proposed class to assert

24   CFAA, CIPA, and CCCL claims based on the enabling of 2FA outside the applicable limitations

25   periods.  *See Metz*, 149 Cal. App. 4th at 418 (continuous accrual did not toll limitations periods

26   for claims based on allegedly fraudulent statements and admissions following inaccurate

27   valuation in an insurance claim because the false statements arose out of the insurance valuation,

28   which occurred outside the limitations period).

**2.      The Discovery Rule Does Not Postpone Claim Accrual.**

A cause of action accrues when all of the elements have occurred.  *Aryeh.*, 55 Cal. 4th at 1191.  The discovery rule allows for tolling of the statute of limitations "until the plaintiff discovered or had notice of all *facts which are essential to the cause of action.*"  *Spellis v. Lawn*, 200 Cal. App. 3d 1075, 1080 (1988) (emphasis in original) (citation omitted).

Plaintiffs' CFAA, CIPA, and CCCL claims turn on their allegations that "Apple does not get user consent to enable [2FA]" and therefore wrongfully interferes with Plaintiffs' use of their devices and access to services at the time 2FA is allegedly enabled without authorization.  (FAC ¶ 3; *see id.* ¶ 4; Defendant Apple Inc.'s Motion to Dismiss First Amended Complaint ("Mot.") at 11:24-12:2, 14:15-17, 17:9-16 (describing the elements of CFAA, CIPA, and CCCL claims).)  Plaintiff Brodsky and putative class members knew, or had notice of, the alleged lack of consent and interference at the time 2FA was enabled or when they subsequently received the email alerting them to 2FA's installation and providing an option to revert to lower security settings.  (*See* Mot. at 6:1-8.)  At the very latest, Plaintiff Brodsky and the putative class members were put on notice the first time they logged on to their Apple ID account after enabling 2FA.  The discovery rule is therefore inapplicable here because they knew, or had notice of, the facts essential to their claims at the time they first encountered the 2FA security protocol.  *See Spellis*, 200 Cal. App. 3d at 1080 ("For the discovery rule to come into play, the cause of action itself must lie unsuspected; hidden facts relating to proof are of no consequence.").

Pivoting away from the FAC, Plaintiffs now argue that their statutory claims do not arise from enabling 2FA, "but rather [their] inability to disable 2FA," (Opp. at 6:13-14), which Plaintiffs argue raises factual issues about when each Plaintiff discovered this alleged fact.  (*See id.* at 6:12-18.)  But no Plaintiff alleges that he first discovered he could not disable 2FA within the applicable limitations period.  In any event, delayed discovery of the alleged inability to disable 2FA would not invoke the discovery rule because that fact is not essential to their claims.

Even assuming that the alleged inability to disable 2FA is an element of Plaintiffs' claims, Plaintiffs do not allege, as they must, any facts establishing "(1) the time and manner of discovery [of that alleged fact] *and* (2) the inability to have made earlier discovery despite reasonable

1    diligence." *Finney v. Ford Motor Co.*, No. 17-CV-06183-JST, 2019 WL 79033, at *3 (N.D. Cal.

2    Jan. 2, 2019) (citation omitted); *see Marshall v. PH Beauty Labs, Inc.*, No. CV 15-02101 DDP,

3    2015 WL 3407906, at *2 (C.D. Cal. May 27, 2015) (declining to apply the discovery rule because

4    "[a] plaintiff cannot simply wait for specific facts necessary to establish a specific cause of action

5    to come to her"). Plaintiffs' argument that discovery is necessary to resolve the application of the

6    discovery rule, (Opp. at 6:17-25), does not apply where Plaintiffs do not even allege when they

7    purportedly discovered that they could not disable the 2FA feature they originally authorized.

8
9

        **B.**      **The Court Should Dismiss Plaintiffs' Common Law Claims Because They Fail to Allege Which State's Common Law They Are Asserting.**

10    Plaintiffs concede that they have failed to identify their state(s) of residence *and* which

11    state's (or states') common laws they are asserting. (*See* Opp. at 7:3-8:15.) Plaintiffs argue they

12    need not identify for the Court and the Defendant which law allegedly was violated because it is

13    premature to conduct a choice-of-law analysis. Plaintiffs then cite to cases where the court

14    declined to conduct a choice-of-law analysis to determine if a named plaintiff could assert a

15    *specific* state law claim on a nationwide basis. (*See* Opp. at 7:8-14.) But here, Plaintiffs have

16    failed to identify ***any*** specific state's law. Before the Court can assess whether the claims may be

17    brought on behalf of the putative nationwide class, Plaintiffs must identify which state's claims

18    they are asserting on behalf of themselves. Apple cannot defend against, and the Court cannot

19    determine the sufficiency of, claims that Plaintiffs have not even identified.[2] (*See* Mot. at 7:5-11.)

20    Even if Plaintiffs had provided adequate notice of the common law claims at issue, courts

21    often decide as a matter of efficient case management to conduct a choice-of-law analysis to

22    determine the sufficiency of class claims at the motion to dismiss stage. (*See, e.g.*, Mot. at 6:26-

23    7:5 (citing cases).) Plaintiffs thus contend in the alternative that, under California's choice-of-law

24    rules, California law should apply to their common law class claims because they have alleged

25    that California has sufficient contacts to those claims. (*See* Opp. at 7:15-8:2.) Without knowing

26

27        [2] In this motion to dismiss, Apple assumed that Plaintiffs intended to assert common law

28    claims under California law. Apple does not waive any objections to the application of California law to Plaintiffs' common law claims.

1  where Plaintiffs reside and were allegedly injured, however, Apple and the Court lack the

2  necessary information to conduct a choice-of-law analysis.  *See Mazza v. Am. Honda Motor Co.*,

3  666 F.3d 581, 590 (9th Cir. 2012) ("California law may only be used on a classwide basis if 'the

4  interests of other states are not found to outweigh California's interest in having its law

5  applied.'") (citation omitted).  Plaintiffs assert that Plaintiff Tracey resides in San Francisco,

6  California, (Opp. at 7:26-28), but do not so allege in the FAC.  Plaintiff Tracey's residence does

7  not resolve whether the other named Plaintiffs, who are not California residents, may bring

8  California common law claims.

9         Plaintiffs' argument that they may assert claims under the laws of different states in the

10  alternative is inapt.  The problem with Plaintiffs' FAC is that they have not identified ***any*** specific

11  state's laws for any of their common law claims.  In any event, if Plaintiffs intended to assert

12  trespass to chattels and unjust enrichment claims under California law, those claims fail for the

13  reasons set forth in Apple's Motion to Dismiss.  (*See* Mot. at 7:12-11:6, 19:2-18.)

14         Finally, Plaintiffs' claim that *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168 (N.D.

15  Cal. 2017), is irrelevant because Apple did not move to dismiss under Federal Rule of Civil

16  Procedure 12(b)(1), (Opp. at 8:10-12), is misguided.  Whether decided under Rule 12(b)(1) or

17  12(b)(6), the analysis is the same: named plaintiffs cannot assert state law claims on behalf of a

18  class that they cannot assert on behalf of themselves.  *Compare Johnson*, 272 F. Supp. 3d at 1175

19  *with Cover v. Windsor Surry Co.*, No. 14-CV-05262-WHO, 2016 WL 520991, at *5 (N.D. Cal.

20  Feb. 10, 2016).  As Plaintiffs have failed to allege the particular state common law claims they

21  assert on behalf of themselves, they cannot assert those claims on behalf of any putative class.

## C.    Plaintiffs Do Not Plausibly Plead Trespass to Chattels.

### 1.    Plaintiffs Authorized 2FA.

24         Apple explained how the FAC demonstrates that Plaintiffs authorized 2FA for their Apple

25  IDs.  (*See* Mot. at 8:11-9:8.)  As to Plaintiffs Tracey and Brodsky, who enabled 2FA through a

26  software update, Plaintiffs claim that their authorization of the *software update* did not extend to

27  *2FA*.  (Opp. at 8:23-10:6.)  For those who enabled 2FA by creating a new Apple ID or allegedly

28  "accidentally" turned it on in their "Settings," Plaintiffs contend that they cannot authorize an

1   allegedly permanent feature.  (*Id.* at 10:7-15.)  Plaintiffs are wrong on both counts.

2          The gist of Plaintiffs' argument is that "[a]llowance of a software upgrade of the overall

3   operating system . . . does not constitute 'voluntary installation' of 2F" because "2FA is an

4   additional feature."  (Opp. at 8:23-25.)  Plaintiffs do not explain what they mean by "additional

5   feature," nor do they allege in the FAC that 2FA is different from any other aspect of the upgrade.

6   Further, Plaintiffs do not cite any authority supporting their claim that authorization of a software

7   update is piecemeal and only extends to certain features and not others.  Nor do Plaintiffs provide

8   any principled method for determining which features of a software update are authorized by

9   consent to the update and which are not.  As the FAC does not allege that the *software update* that

10  included 2FA was without authorization, neither was 2FA enabled without authorization.  Indeed,

11  in *In re Apple & ATTM Antitrust Litigation*, the court granted Apple's motion for summary

12  judgment on the plaintiffs' trespass to chattels, CFAA, and CCCL claims because the plaintiffs

13  voluntarily installed the software update that, in addition to upgrading the operating system,

14  allegedly rendered certain iPhones permanently inoperable.  No. C 07–05152 JW, 2010 WL

15  3521965, at *3 n.6 (N.D. Cal. Jul. 8, 2010) *vacated in part sub nom. on other grounds In re Apple*

16  *& AT & TM Antitrust Litig.*, 826 F. Supp. 2d 1168 (N.D. Cal. 2011).  Choosing to install a

17  software update served as authorization for *all* parts of that update, thereby defeating the

18  Plaintiffs' trespass, CFAA, and CCCL claims.  *Id.*

19         Plaintiffs similarly contend that they did not authorize 2FA through a software update

20  because Apple allegedly did not disclose that 2FA cannot be disabled once installed.  (*See* Opp. at

21  9:1-24.)  Plaintiffs cite several cases discussing contract formation standards in the context of a

22  motion to compel arbitration.  (*See* Opp. at 9:2-24 (citing cases), 10:2-6 (same).)  These cases are

23  inapposite, however, because unlike consent to arbitrate, which requires an agreement,

24  authorization for trespass purposes is not a matter of contract and does not require mutual assent.

25  *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 842 (N.D. Cal. 2017).

26         Moreover, in the context of software updates, courts have rejected Plaintiffs' claim, (Opp.

27  at 10:7-11), that consent is limited to terms explicitly provided.  *See In re Apple & ATTM*

28  *Antitrust Litig.*, 2010 WL 3521965, at *7.  Plaintiffs cannot condition their authorization of a

software update on their own idiosyncratic, un-communicated requirements, such as the future ability to disable a specific feature included in a software update.  In *Baugh v. CBS, Inc.*, for example, the plaintiff invited a camera crew into her home, but alleged that she told them her consent to be recorded was only "as long as [she] was not going to be on anyone's television." 828 F. Supp. 745, 756 (N.D. Cal. 1993).  She sued after the film televised, but the court dismissed her trespass claim because she failed to demonstrate lack of consent.  That she did not know the film would be televised and even told the camera crew not to do so made no difference because consent need not be "knowing or meaningful."  *Id.* at 757.  Thus, Plaintiffs Tracey and Brodsky's authorization of the software update encompassed all features of that update, whether or not those plaintiffs were aware of the details of each particular feature.

Plaintiffs likewise claim that consumers who "accidentally" enable 2FA by turning it on in "Settings" do not authorize 2FA because they are allegedly not notified that they cannot disable it.  (Opp. at 10:12-15.)  It is hard to imagine how an Apple user can "accidentally" turn on 2FA through Settings, because to do so, they must navigate through multiple steps and click specific buttons.  Indeed, the FAC makes no allegation that any Plaintiff enabled 2FA by "accidentally" completing these multiple steps.  But even if there were such an allegation, Plaintiffs' argument fails because as discussed above, consumers consent to all aspects of 2FA when they turn it on through Settings, "accidentally" or otherwise.  Moreover, consumers who decided they did not want to upgrade to 2FA could follow the link in the email received after enabling 2FA that allowed them to revert to their prior security settings.  (*See* Mot. at 8:20-9:3.)

As to consumers who created Apple IDs with 2FA enabled, Plaintiffs complain that such individuals cannot have authorized this "forc[ed]," permanent feature.  (Opp. at 10:11-12.)  But, as with a software update, Plaintiffs cannot limit their authorization of an Apple ID to only those features they like at that time.  Nor can Plaintiffs cite any authority that imposes on Apple an obligation to offer a menu of options through which users can pick and choose which feature of the operating system, software update, or iCloud account they would like to enable, and to offer mechanisms for users to disable any specific feature at any time.  Plaintiffs thus fail to rebut their own allegations that they authorized Apple to enable 2FA.

**2.**     **Plaintiffs' Trespass to Chattels Claim Also Fails Because They Cannot Allege Any Damage to Their Property.**

Since the "damages" alleged in the FAC cannot support a trespass claim, Plaintiffs attempt to shore up their claim by asserting new damages in the Opposition for the first time. These new damages are not properly considered in evaluating Plaintiffs' claim and, even if considered, do not save it. Additionally, the authority Plaintiffs cite to support their argument that Plaintiffs Bishop and Schwartz's alleged sufficient damage by alleging lack of access to their devices while in the account recovery process is unavailing.

In their Opposition, Plaintiffs for the first time claim that logging in with 2FA causes Plaintiffs to be "blocked 100% with no bandwidth" for admittedly "short periods of time." (Opp. at 10:21, 12:18, 12:24-25.) This new bandwidth allegation is absent from the FAC; therefore, the Court must disregard it. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In any event, "[a] mere momentary or theoretical deprivation of use is not sufficient" for a trespass to chattels claim. *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1357 (2003) (citation omitted).

Plaintiffs also newly claim that Apple dispossessed Plaintiffs of their devices and that dispossession is actionable without further damages. (*See* Opp. at 11:1-6.) The FAC lacks any allegations, however, that Plaintiffs lost possession of their devices through Apple's conduct. Plaintiffs' attempt to characterize the alleged delay in accessing Plaintiffs' Apple ID accounts as "constructive dispossession," (*id.*), is no more successful. Actual dispossession may be actionable without further damages, but "other forms of interference *require some additional harm* to the personal property or the possessor's interests in it." *Jamgotchian v. Slender*, 170 Cal. App. 4th 1384, 1401 (2009) (emphasis added). Plaintiffs nowhere allege that Apple caused "actual dispossession" by causing Plaintiffs to lose possession of their devices.

Plaintiffs fare no better with the "damages" they plead for Plaintiffs Bishop and Schwartz, who allegedly lost access to their devices while in account recovery after losing their trusted device. Plaintiffs rely on cases in which alleged trespass to the computer systems of large corporations did or could inhibit their ability to provide services to a large base of customers. *See eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1071 (N.D. Cal. 2000) (finding

1  defendant's use of eBay's computer system likely constituted damage because otherwise auction

2  aggregators would crawl eBay's site "potentially to the point of denying effective access to

3  eBay's customers"); *Hotmail Corp. v. Van$ Money Pie Inc.*, No. C 98-20064 JW, 1998 WL

4  388389, at *7 (N.D. Cal. Apr. 16, 1998) (causing damage by "threatening to damage Hotmail's

5  ability to service its legitimate customers" and the "added costs for personnel to sort through and

6  respond to the [tens of thousands of] misdirected e-mails"). But as the court in *In re Apple &*

7  *ATTM Antitrust Litigation* explained, the loss of "commercial email servers in a large corporation

8  for a 'substantial' or 'measurable' amount of time . . . stands in sharp contrast to loss of use of a

9  personal phone for a few days." 2010 WL 3521965, at *6. Plaintiffs do not allege that they

10  permanently lost use of their Apple devices, and the temporary delay in accessing Plaintiffs

11  Bishop and Schwartz's Apple ID accounts does not suffice to plead a trespass to chattels claim.[3]

12  ### 3.   Any Alleged Damage Was Not Caused by Apple.

13  The FAC reveals that Apple did not cause Plaintiffs Bishop and Schwartz to temporarily

14  lose access to their Apple ID accounts; their independent loss of their trusted devices did. (*See*

15  FAC ¶¶ 21-22.) Plaintiffs respond that it is reasonably foreseeable that consumers will

16  occasionally lose their trusted devices, like they do their house or car keys, and that Apple caused

17  Plaintiffs Bishop and Schwartz's temporary lack of access to their devices by not providing them

18  with an easy method to recover access to their Apple IDs when they lost their "keys." (Opp. at

19  11:7-12.) But if Plaintiff Bishop could not foresee the loss of his trusted device, how could

20  Apple? (*See* FAC ¶ 20 ("based on an *unforeseen consequence outside of his control*, [Plaintiff

21  Bishop] lost access to his trusted device").) And foreseeability alone is not enough because

22  proximate cause "limits the defendant's liability to those foreseeable consequences that the

23  defendant's [conduct] was a *substantial factor* in producing." *Ileto v. Glock Inc.*, 349 F.3d 1191,

24  1206 (9th Cir. 2003) (emphasis added). Any Apple procedure to reinstate access to an Apple ID

25  _____

26  [3] The length of account recovery depends on how long it takes to verify that the person
trying to gain access to an Apple ID account — apparently without access to a trusted device —
is actually the person authorized to access the account. (*See* FAC ¶ 22 (describing Schwartz's

27  account recovery process to "prove his identity"), ¶ 18 (displaying email about 2FA from Apple
that explains that 2FA "is an additional layer of security to ensure that you're the only person who

28  can access your account, even if someone knows your password").)

1    *after* a trusted device is lost, (FAC ¶¶ 21-22), is not a substantial factor in producing the lack of

2    access, especially where a user lost a trusted device based on unforeseen circumstances and could

3    not otherwise verify that he is the true owner of the account he is trying to access.

4          Plaintiffs' only legal support is distinguishable.  In *Ileto*, the defendant "*was in a position*

5    *to prevent the harms alleged*" because the defendant "knew which distributors sold guns that

6    were later found to be purchased by prohibited buyers . . . and [the defendant's] marketing and

7    distribution system essentially" gave rise to the secondary, illegal gun market.  349 F.3d at 1207

8    (emphasis added).  Here, Apple cannot know which users will lose their trusted devices and is in

9    no position to prevent such losses.  Thus, even if Plaintiffs plausibly alleged "damage" to their

10   phones, Apple's conduct did not cause this "damage."

11         **D.**      **Plaintiffs Fail to State a Wiretap Claim Under CIPA.**

12         Plaintiffs offer no reason for the Court to stretch section 631 to state a wiretap claim.[4]

13   Fatal to their claim, Plaintiffs agree that Apple was a party to the only alleged communication

14   involving 2FA.  *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d at 845 (section 631

15   prohibits only "*third-party* access to ongoing communications") (internal citation omitted)

16   (emphasis in original).  Plaintiffs now explain that their claim is based on the "request that

17   triggers 2FA" (Opp. at 14:6), i.e., the request to verify a user's identity through 2FA before

18   accessing the Apple ID account.  As Plaintiffs themselves allege, the 2FA login process involves

19   a six-digit verification code "*sent by an Apple Server*."  (FAC ¶ 17.)  In Plaintiffs' own words,

20   "[e]ach time 2FA is triggered, Apple uses an internet server . . . *to receive* 2FA request [and] *send*

21   *subsequent 2FA code*."  (Opp. at 13:27-28.)  Thus, it is undisputed that Apple is a party to the

22   only alleged 2FA "communications."  That Plaintiffs "do not want to communicate with Apple,"

23   (Opp. at 13:8), is irrelevant and does not save their CIPA claim (*see* Mot. at 12:3-24).[5]

---

24

25       [4] Plaintiffs assert that Apple cannot rely on *Brekka* and *Ribas* to explain the Legislature's intent in creating CIPA because they only apply to criminal claims.  (Opp. at 14:24.)  Not so.  *See*

26   *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (addressing a *civil cause of action* under section 631 of CIPA); *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985) (same).

27       [5] To avoid dismissal, Plaintiffs rely on *Ramos v. Capital One, N.A.*, No. 17-CV-00435-BLF, 2017 WL 3232488 (N.D. Cal. July 27, 2017), a case addressing sections 632 and 632.7 of

28   CIPA, which Plaintiffs do not allege in the FAC.  (*See* FAC ¶ 56 (alleging Apple violated "California Penal Code section 631").)  *Ramos* is thus inapposite.

1    Plaintiffs also fail to respond to Apple's argument that they did not plausibly allege the

2    remaining section 631 elements.  (*See* Mot. at 11:24-12:2 (listing elements).)

3    *First*, the only "machine, instrument, or contrivance" Plaintiffs identify is Apple's

4    "internet or cloud-based servers."  (FAC ¶ 4, Opp. at 13:26-14:2.)  But Plaintiffs still have not

5    identified any allegations in the FAC showing how Apple's servers were used to intercept the

6    "contents" of any "communication" "in transit."  *See* Cal. Penal Code § 631(a).  Information

7    stored on Apple's servers is no longer "in transit."  *See Crowley v. CyberSource Corp.*, 166 F.

8    Supp. 2d 1263, 1269 (N.D. Cal. 2001) (finding that Amazon did not "intercept" the

9    communication because "Amazon did not acquire it using a device *other than the drive or server*

10   *on which the e-mail was received*") (emphasis added).

11   *Second*, Plaintiffs' argument that they did not authorize 2FA because they allegedly were

12   unaware that 2FA cannot be disabled (Opp. at 13:3) fails because Plaintiffs authorized the

13   software update or Apple ID incorporating the 2FA feature.  (*See supra* Section II.C.1.)  Plaintiffs

14   thus authorized any "communications" Apple allegedly intercepted during the 2FA process.

15   *Third*, Plaintiffs fail to allege what "contents" of any "communication" Apple allegedly

16   intercepted "in transit."  The FAC is devoid of any allegation that Apple "intercepts" any

17   "communications" containing "files, photos, music, videos etc. on devices, [or] communications

18   through services using FaceTime, iMessage, etc." through 2FA.  (Opp. at 14:3-5 (citing FAC

19   ¶¶ 14-15, 24-26).)  Per the FAC, such alleged "communications" could not have been "in transit"

20   because Plaintiffs allege they could not access those files or services.  (*See, e.g.*, FAC ¶ 17

21   ("Password alone is no longer enough to access your account"), ¶ 21 ("no access to his Apple

22   Services").)  Plaintiffs also baldly assert, without legal support, that "[m]andating extraneous

23   steps outside the control of Plaintiffs that hinders an intended activity. . . is an interception that is

24   'in transit.'"  (Opp. at 14:13-15.)  That neither explains how any communication is being

25   intercepted nor the "contents" of any such communication.  The only possible communication "in

26   transit" is Plaintiffs' "request to access" their Apple ID account through 2FA, (Opp. at 14:17-19),

27   which is a communication to which Apple is a party.  Plaintiffs' CIPA claim fails.

28

1

**E.      Plaintiffs' CFAA Claim Should Be Dismissed.**

2      Plaintiffs do not dispute that the CFAA "is to be applied narrowly to punish hacking."

3 *Lakeland Tours, LLC v. Bauman*, No. 13CV2230-CAB-JMA, 2014 WL 12570970, at *4 (S.D.

4 Cal. Feb. 11, 2014) (citation omitted).  And Plaintiffs admit that Apple is "not a 'hacker.'"  (Opp.

5 at 3:27.)  Consistent with this admission, they have not plausibly alleged the required elements.

6

**1.      Plaintiffs Fail to Allege Any "Access" By Apple That Was
"Without Authorization" or "Exceeded Authorization."**

7

8      Plaintiffs argue that *In re Apple & ATTM Antitrust Litigation*, which held that voluntary

9 software installation is not "access" "without authorization" under the CFAA, does not apply

10 because the plaintiffs there "voluntarily installed the software that subsequently caused loss of

11 third-party applications," which "constituted a single act."  (Opp. at 9:25-28.)  So too here.

12 Plaintiffs allege that Plaintiffs Brodsky and Tracey installed the software upgrade that enabled

13 2FA and that Apple's conduct "constituted a single act for purposes of the [CFAA]."  (FAC

14 ¶¶ 19-20, 75.)  Plaintiffs further claim that they did not voluntarily install 2FA because they did

15 not have "notice of material terms."  (Opp. at 14:27.)  As explained in Section II.C.1, *supra*,

16 Plaintiffs' reliance on contract formation principles related to motions to compel arbitration is

17 irrelevant to determining whether someone provided authorization under the CFAA (or CIPA,

18 CCCL, or trespass to chattels).  Plaintiffs' CFAA claim therefore fits squarely within *In re Apple*

19 *& ATTM Antitrust Litigation* and should be dismissed.  2010 WL 3521965, at *7 (granting

20 Apple's motion for summary judgment as to plaintiffs' CFAA, CCCL, and trespass to chattels

21 claims because plaintiffs voluntarily installed the complained-of software).

22      Plaintiffs similarly cannot allege any facts that Apple "exceeded authorization."  They do

23 not refute that any of the Plaintiffs who received the email that spelled out what 2FA is and

24 provided Apple ID owners a link to return to previous security settings within two weeks (FAC

25 ¶ 18) failed to revoke that authorization.  (*See* Mot. at 15:18-28.)  Instead, Plaintiffs contend that

26 it is not industry standard to "compel" 2FA and that smartphones are and "important part of the

27 individual."  (Opp. at 15:2-7.)  These scattershot assertions do not demonstrate that Apple

28 accessed Plaintiffs' devices without authorization, much less exceeded any authorization

1    Plaintiffs granted.  Therefore, the Court should dismiss Plaintiffs' CFAA claim.

2              **2.    Plaintiffs' Conclusory Allegation of Statutory Loss or Harm Is**
              **Also Fatal to Their CFAA Claim.**

3

4         The Court should reject Plaintiffs' conclusory recitation of damages under the CFAA in

5    the FAC and ignore the conclusory assertions made for the first time in Plaintiffs' Opposition

6    because neither satisfies Plaintiffs' burden to survive a motion to dismiss.  *See DocMagic, Inc. v.*

7    *Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1150 (N.D. Cal. 2010) (finding that such a bare allegation

8    "is insufficient to satisfy the CFAA's loss requirement").  *Outside of the FAC*, Plaintiffs now

9    argue that the cost of their Apple devices, Apple Services, and third-party apps "are lost when

10   Apple's 2FA blocks the usage."  (Opp. at 15:11-14.)  This new allegation is not present in the

11   FAC.  Nor is it supported by the facts actually alleged in the FAC because Plaintiffs do not allege

12   a *permanent* loss of any device, service, or application.  (*See generally* FAC); *see also In re Apple*

13   *& ATTM Antitrust Litig.*, 2010 WL 3521965, at *6 (finding that plaintiffs "have not shown actual

14   harm by loss of use of their phones" for a temporary period and where a named plaintiff provided

15   no evidence that he "paid for any third party applications" that were permanently lost after

16   software upgrade).  As the FAC contains only a conclusory statement of loss unsupported by the

17   factual allegations, Plaintiffs' CFAA claim fails for this additional reason.

18              **F.    Plaintiffs' CCCL Claim Fails.**

19        For Plaintiffs to allege that Apple accessed their devices "without permission" under the

20   CCCL, they must allege that Apple did so "in a manner that overcomes technical or code-based

21   barriers."  (Mot. at 17:19-21 (quoting *Flextronics Int'l, Ltd. v. Parametric Tech. Corp.*, No. 5:13-

22   CV-00034-PSG, 2014 WL 2213910, at *4 (N.D. Cal. May 28, 2014) (citation omitted)).)

23   Plaintiffs argue that Apple did not have permission based on lack of notice that "voids the

24   contract."  (Opp. at 15:17.)  But Plaintiffs' authorization premised on allegedly incomplete

25   information does not demonstrate that Apply overcame any "technical or code-based barriers."

26   Even if it did, Plaintiffs do not identify the contract supposedly at issue or provide any legal

27   support for why contract principles apply to CCCL claims.  (*See* Section II.C.1, *supra*.)

28        Plaintiffs also offer a meager response to Apple's challenge based on Plaintiffs' failure to

1    sufficiently allege the other required elements of the CCCL claim by referring to the section of

2    the Opposition addressing content in transit under CIPA.  (*See* Opp. at 15:19-20.)  Plaintiffs'

3    CIPA discussion does not address and, therefore concedes, Plaintiffs' failure to sufficiently allege

4    the remaining required elements of a CCCL claim.  *See Ewing v. Encor Solar, LLC*, No. 18-cv-

5    2247-CAB-MDD, 2019 WL 277386, at *8 (S.D. Cal. Jan. 22, 2019) (failure to address motion to

6    dismiss arguments concedes those arguments).  Plaintiffs' CCCL claim thus fails.

7    <center>**G.    The Court Should Dismiss Plaintiffs' Unjust Enrichment Claim.**</center>

8         Plaintiffs cite to *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988 (2015), to

9    argue that unjust enrichment is a viable cause of action under California law.  The *Hartford* court

10   allowed an unjust enrichment claim to proceed in the context of a dispute over legal fees between

11   an insurer and the insured and the insured's counsel, but "emphasize[d] that [its] conclusion

12   hinges on the particular facts and procedural history of t[he] litigation."  61 Cal. 4th at 999.

13   Following *Hartford*, California intermediate appellate courts continue to hold that there is no

14   cause of action for unjust enrichment outside of the specific facts considered in that case.  *See,*

15   *e.g.*, *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018) ("Unjust enrichment is

16   not a cause of action.") (citation omitted);  *Bank of New York Mellon v. Citibank, N.A.*, 8 Cal.

17   App. 5th 935, 955 (2017) (same).  Federal district courts have followed suit.  *See, e.g.*, *Fowler v.*

18   *Wells Fargo Bank, N.A.*, No. 17-CV-02092-HSG, 2017 WL 3977385, at *5 (N.D. Cal. Sept. 11,

19   2017) ("California does not recognize an independent cause of action for unjust enrichment.").

20        Even if an unjust enrichment claim were viable, Plaintiffs failed to state such a claim.  As

21   explained above, they authorized Apple to enable 2FA and did not revoke that permission despite

22   having a reasonable opportunity to do so.  (*See supra* Sections II.C.1, II.E.1, and II.F; Mot. at

23   4:25-27.)  Apple also has shown that Plaintiff Brodsky and the putative class's claims fail for the

24   additional reason that they are barred by the statute of limitations.  (Mot. at 19:10-18.)  In

25   response, Plaintiffs offer only the same defective arguments that Apple refuted above.  (*See supra*

26   Section II.A.)  The Court should dismiss Plaintiffs' unjust enrichment claim.

27   **III.        CONCLUSION**

28        Therefore, Apple respectfully requests that the Court dismiss Plaintiffs' entire FAC.

1

2
Dated:  May 22, 2019                              MORRISON & FOERSTER LLP

3

4                                                  By: _/s/ Tiffany Cheung_____
                                                       Tiffany Cheung

5                                                      Attorneys for Defendant
                                                       APPLE INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28