Peter R Afrasiabi (SBN 193336)
Email: pafrasiabi@onellp.com
Deepali A. Brahmbhatt (SBN 255646)
Email: dbrahmbhatt@onellp.com
ONE LLP
4000 MacArthur Blvd., East Tower, Suite 500
Newport Beach, CA 92660
Telephone:     (949) 502-2870
Direct:        (650) 600-1298
Facsimile:     (949) 258-5081

John E. Lord (SBN 216111)
Email: jlord@onellp.com
ONE LLP
9301 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90210
Telephone:     (310) 866-5157
Facsimile:     (310) 943-2085

Attorneys for Plaintiffs
Jay Brodsky, Brian Tracey, Alex Bishop
Brendan Schwartz, William Richardson
and John Kyslowsky

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAY BRODSKY, BRIAN TRACEY, ALEX BISHOP, BRENDAN SCHWARTZ, WILLIAM RICHARDSON, and JOHN KYSLOWSKY, each on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | Case No. 5:19-CV-00712-LHK<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Jay Brodsky ("Plaintiff Brodsky"), Brian Tracey ("Plaintiff Tracey"), Alex Bishop ("Plaintiff Bishop"), Brendan Schwartz ("Plaintiff Schwartz"), William Richardson ("Plaintiff Richardson"), and John Kyslowsky ("Plaintiff Kyslowsky")[1], herein collectively ("Plaintiffs") by and through their counsel, bring this Class Action Complaint against Defendant Apple, Inc. ("Apple" or "Defendant"), on behalf of themselves and all others similarly situated, and alleges upon personal knowledge as to their own actions, and upon information and belief as to counsel's investigations and all other matters, as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this privacy and trespass class action lawsuit against Apple, because Apple does not give Plaintiffs an option to turn off two-factor authentication ("2FA"), thereby locking out each of the Plaintiffs from use of his personal devices to access any of the files and photos.  Apple also blocks access to services including Third-Party applications on his devices.  Plaintiffs cannot access their own devices to access photos, music or other files without network coverage, *i.e.*, internet access.

2.      Once Plaintiffs decide to disable 2FA, regardless of how 2FA was initially enabled, Apple should not have authorization to continue to implement 2FA.  Apple should not be able to prohibit Plaintiffs from disabling 2FA, including a delayed removal in some instances that is after a lapse of an initial fourteen (14) days.

3.      Once two-factor authentication is enabled either by default, on a software update or accidentally by a user and 14 days have lapsed, Apple does not allow any mechanism to disable two-factor authentication.  Two-factor authentication imposes an extraneous logging in procedure that requires a user to both (i) remember password; and (ii) have access to a trusted device or trusted phone number to receive an additional six-digit code that needs to be entered at the time of logging in addition to the user set password.  A user does not have an option to disable such doubled up security measures and is stuck with wasting time to log on to his own device.  Two-factor authentication requires additional steps to access any

---

[1] This is an Amended Complaint in response to the Court's Order (ECF No. 40.)  Further, this Complaint adds two additional parties, pursuant to Fed. R. Civ. P. 15(a)(2) and Apple's written consent.  (ECF No. 41.)

**SECOND AMENDED CLASS ACTION COMPLAINT**

Third-Party apps or services requiring passwords.  Two-factor authentication is required each time you turn on a device.

4.      Apple does not receive user consent to enable two-factor authentication.  Apple, further, does not receive user consent to then *remove the option forever* to disable two-factor authentication, once it is enabled.  An email with a long paragraph thanking the user and highlighting the good features of two-factor authentication followed by a simple single last line in an email saying that the link will expire on a given date does not suffice to put the user on notice of his options and make an informed decision as to whether to click the link to disable it.

5.      By mandating two-factor authentication, Apple tracks user login activity through its internet or cloud-based Servers.  Apple is controlling and interfering with the usage of user's own devices and access to services.

6.      As a result of Apple's coercive policies with regards to security of Plaintiffs owned devices, Plaintiffs and millions of similarly situated consumers across the nation have been and continue to suffer harm.  Plaintiffs and Class Members have suffered economic losses in terms of the interference with the use of their personal devices and waste of their personal time in using additional time for simple logging in.

7.      Plaintiffs and the Class seek monetary damages as well as declaratory and injunctive relief to prevent Apple from continuing its practice of not allowing a user to choose its own logging and security procedure.

**PARTIES**

8.      Plaintiffs in this action are Jay Brodsky, Brian Tracey, Alex Bishop, Brendan Schwartz, William Richardson, and John Kyslowsky, individuals residing in the United States.  Plaintiff Brodsky resides in Great Neck, New York.  Plaintiff Tracey resides in San Francisco, California.  Plaintiff Bishop resides in Lebanon, Ohio.  Plaintiff Schwartz resides in Pittsburgh, Pennsylvania.  Plaintiff Richardson is a senior citizen and retired sheriff residing in Pueblo West, Colorado.  Plaintiff Kyslowsky is also a retired senior citizen residing in Georgetown, Texas.

9.      Apple, the designer, manufacturer, and vendor of the smartphones and laptops and service provider of services associated with Apple ID, is a California corporation.  It maintains its headquarters

**SECOND AMENDED CLASS ACTION COMPLAINT**

and principal place of business in Cupertino, California. Upon information and belief, Apple made all decisions and actions referenced herein at or near its corporate headquarters in Cupertino, California, or elsewhere in the state of California.

10. Apple transacts substantial business throughout California, including implementing the business policies relating to logging into Apple manufactured and/or sold devices and services associated with a user's Apple ID including but not limited to, App Store, Apple Music, iMessage, iTunes, iCloud, FaceTime and more. It is believed and alleged that substantially all of the conduct giving rise to the claims brought by Plaintiffs occurred or emanated from California.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over this action pursuant to Title 28, United States Code, Section 1331.

12. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

13. Venue is proper in this District under Title 28, United States Code, Section 1391(b) because defendant Apple, Inc. is a corporation headquartered in Cupertino in the State of California.

14. In addition, venue is proper in this District under Title 28, United States Code, Section 1391(b) because Defendant's improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district.

15. This Court is proper for jurisdiction and venue based on Apple's choice of law provisions. All terms and use agreements for all of the Apple Products and Services include a "Controlling Law" provision that effectively chooses the laws of the State of California. (*See*, for example, terms and use agreements at https://www.apple.com/legal/sla/.) Based on Defendant's Controlling Law provision that applies nationwide irrespective of the Plaintiffs and the Class residency, the laws of the State of California apply on Defendant's improper conduct alleged in this complaint.

**SECOND AMENDED CLASS ACTION COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF FACTS**

**Apple and its 2FA Policy**

16.     Apple, Inc. is a multi-billion-dollar company that, at one point, was ranked first by market value in 2018.  Apple regularly markets and touts its privacy policies to be favorable to an individual and people similarly situated like Plaintiff.  *See*, for example, Apple's recent advertisement at Consumer Electronics Show at Las Vegas, 2019.



/ / /

/ / /

/ / /

**SECOND AMENDED CLASS ACTION COMPLAINT**

**Apple Devices**

17.     Apple designs, manufactures, markets and sells consumer devices including smartwatches, iPhones, iPads, Macbooks, iMacs, and Apple TVs (collectively, "Apple devices").  When a consumer purchases an Apple device, the purchased Apple device becomes the personal property of the consumer. Apple no longer has any ownership or property rights to the Apple devices after sale.



(https://getsupport.apple.com/ showing Apple devices last accessed January 11, 2019)

18.     Apple devices cost approximately cost from $300 to $14,000 per device.

| Product | Top price |
| --- | --- |
| **iPhone** | **$1,149** |
| **iPad** | **$1,279** |
| **Apple Watch** | **$1,349** |
| **MacBook** | **$1,949** |
| **MacBook Pro** | **$6,699** |
| **Mac Pro** | **$6,999** |
| **iMac Pro** | **$13,199** |

(https://qz.com/1327909/apple-is-a-luxury-goods-maker/ last visited September 17, 2019.)

19.     Plaintiff Brodsky owns one or more Apple devices including an iPhone and two Macbooks. (*See* Exhibit A, true and correct copies showing Plaintiff Brodsky's receipt of Apple devices purchase.) Plaintiff Tracey owns one or more Apple devices including three Macbooks and three iPads excluding an iPhone. Plaintiff Bishop owns two iPhones.  Plaintiff Schwartz owns one personal iPhone and uses one business iPhone.  Plaintiff Richardson, a 70-year old retired sheriff, owns an iMac 27", iMac 25", iPad 3

**SECOND AMENDED CLASS ACTION COMPLAINT**

and 2 iPhone 7+.  Plaintiff Kyslowsky, a retired senior citizen, owns four Apple devices in his household including iPhones and iPads.

**Apple Services**

20.    Apple provides services including but not limited to, App Store, Apple Music, iMessage, iTunes, iCloud, FaceTime and more (collectively, "Apple Services") that require a logging in using Apple ID.  Many of these Apple Services are installed by default on Apple devices.  All of the Plaintiffs and the Class use App Store, iTunes, iMessage, iCloud, FaceTime and more.

21.    Apple Services and Third-Party Apps come at a monthly, yearly or one-time subscription costs.  Plaintiffs and the Class make monthly, yearly or one-time payments to subscriptions.

22.    Apple Services cost from $4.99 to $67 a month, including for example, Apple Music: $14.99/month (family plan, a personal plan is $9.99), News+: $9.99/month, Apple Arcade: $4.99/month, TV+: $4.99/month, iPhone Upgrade Program: $35 to $67/month and iCloud Storage: $9.99/month (for two terabytes, cheaper plans are available).  (*See* forbes.com/sites/johnkoetsier/2019/09/10/apples-6-consumer-subscription-services-will-cost-you-100month/#7080f8887266.)

23.    Plaintiff Tracey has purchased Logic Pro X, Final Cut Pro, Mainstage 3 and Apple remote desktop applications that are installed on his Apple devices and blocked from access.  Prices listed currently in App Store for these applications are $199.99 for Logic Pro X, $299.99 for Final Cut Pro, $29.99 for Mainstage 3 and $79.99 for Apple remote desktop applications.

24.    Plaintiff Bishop has paid and continues to pay Apple monthly fees for iTunes, Apple Music and iCloud subscriptions.  (*See*, *e.g.*, below sample screenshots of Plaintiff Bishop's receipts.)

/ / /

/ / /

/ / /

**SECOND AMENDED CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19       (Sample screenshot of Plaintiff Bishop's iTunes receipt)

20

21       25.     Plaintiff Bishop paid subscriptions even during account lockout periods.  (*See, e.g.*, sample

22   below sample screenshots of Plaintiff Bishop's iCloud receipts.)

23       26.     Plaintiff Richardson also paid subscriptions even during account lockout periods.  (*See*,

24   Exhibit B, true and correct copies of receipts attached to this Complaint.)

25   / / /

26   / / /

27   / / /

28

**SECOND AMENDED CLASS ACTION COMPLAINT**

(Sample screenshots of Plaintiff Bishop's iCloud receipts.)

**Third-Party Apps**

27.     Plaintiffs and the Class can install and operate different Third-Party Apps that can be installed for free or with a cost.  The cost of different Third-Party Apps ranges from $10 to $200 a month.  All Plaintiffs use Third-Party Apps.

**SECOND AMENDED CLASS ACTION COMPLAINT**

28.     Plaintiff Brodsky uses Third-Party Apps including, for example, ABC 7 NY News, Amazon, Beddi, Bloomberg, Boom, Buzz Feed, Capital One, CNBC, CNN, EBay, Galaxy Watch, Gmail, Kitco Gold Live, Instacart, Lookout, My Fios, NBC 4 NY News, NY Post, LIRR Time Schedule, Overcast, Park NYC, Paypal, Amazon Prime Now, Soundhound, T-Mobile, TFCU, Weather Channel, Venmo, Uber, Vice, Waze, WholeFoods, Yahoo Mail, Yelp, YouTube, Spotify, Touch of Modern.

29.     Plaintiff Tracey uses Third-Party Apps including, for example, Google Maps, Google Chrome, Google Drive, WhatsApp, Modius, Guitar tab pro, Kaspersky VPN, Google authenticator, Brave browser, Lpic-1 Exam, Sololearn, CNN, The unarchiver, Yi home, White Noise Lite, Gogo entertainment, Alaska airlines.

30.     Plaintiff Schwartz uses Third-Party Apps including, for example, Find friends, Uber, Mint, Fitbit, Zoom, WhatsApp, Starbucks, Venmoe, Linkedin, Amex, UPMC, Realtor, Zillow, Caravan, Cars.com, Autotrader, CarGurus, Garageband, AirBnB, Amazon, Alexa, Lyft, and Kindle.

31.     Plaintiff Richardson uses Third-Party Apps including, for example, Brother iPrint, Carbon Copy Cloner, CleanMyMac, EasyEnvelopes, Garmin Express, Germini !!, Google Earth Pro, OpenOffice, PixeImator, Quicken, TimeMachineEdit, Weather Live.

32.     Plaintiff Kyslowsky uses Third-Party Apps including, for example, News, Twitter, Facebook, Instagram, YouTube, Kindle, Messenger, Yelp, Google Earth, Excel. (*See* attached <u>Exhibit C</u> showing payment receipts for Third-Party Apps.)

33.     Plaintiffs have a right to access Third-Party Apps on their devices without interference from Apple and there is a cost associated with each App even when it is installed for free.

34.     Each Apple device after purchase is associated with an Apple ID that is the consumer (owner) email address.

35.     There are many ways 2FA can be enabled for an Apple ID.  Apple enables Two-factor authentication ("2FA") for Apple ID when: (i) a software update occurs on one of the Apple devices; (ii) on creation of a new Apple ID, or (iii) owner of the Apple device turns on two-factor authentication in the Settings.



(https://getsupport.apple.com/ showing Apple ID services last accessed January 11, 2019)



(https://support.apple.com/en-us/HT201303 last accessed on January 8, 2019.)

36.     Apple promotes user to enable 2FA by pushing pop-up notifications and red flags in the Settings menu that request the user to turn on 2FA.  Plaintiffs and the Class cannot perform a software upgrade of the operating system without turning on 2FA.  Apple 2FA is enforced even for personal and local access of Apple devices.  Regardless of how 2FA is turned on, Apple places unreasonable restrictions on disabling of 2FA.  Plaintiffs and the Class do not have an option to turn on or turn off 2FA selectively at different times.  Such a restriction, hampers Plaintiffs use of Apple Products, Services and Third-Party Apps.

/ / /

/ / /

/ / /

**SECOND AMENDED CLASS ACTION COMPLAINT**



(Screenshots of Apple's pop-up notifications and red flag in Settings Menu.  Nowhere does Apple state the restrictions on disabling 2FA once it is enabled.)

37.     Apple enabled 2FA for Plaintiffs without their consent.  Plaintiff Brodsky's Apple devices had a software update that enabled 2FA for Apple ID without his knowledge or consent on or around September of 2015.  He did not consent to 2FA.

38.     On or around September 2017, 2FA was turned on for Plaintiff Tracey's Apple ID after a software update on his Apple devices.  He needs access to the latest software updates for his work. He works as a MacAdmin and manages over 400 Apple Devices.  When he has to travel to a client location for work reasons, Plaintiff Tracey cannot login to his personal account to access Apple Services and his personal Apple device because traveling with an additional trusted device is not feasible.  Apple does not provide an option to upgrade software without 2FA.  He did not consent to 2FA.

39.     Plaintiff Bishop, Plaintiff Schwartz, Plaintiff Richardson and Plaintiff Kyslowsky do not remember when 2FA was enabled for them.  They did not install 2FA by turning on 2FA in the Settings. They did not consent to 2FA.

40.     Without 2FA, the Apple device is secure using a password pin that is local to the device. The software that grants access to Apple devices is local to the device and does not access any Apple Servers on the Internet.  With 2FA enabled, Apple Servers on the internet are involved with each request to login and access the Apple devices.



(Screenshots of Plaintiff Bishop's iPhone requesting six-digit verification code.)

41.     2FA increases the complexity of using the Apple devices, Services and Third-Party Apps for Plaintiffs and Class, especially for Senior Plaintiffs and Senior Class members.  Apple does not provide

**SECOND AMENDED CLASS ACTION COMPLAINT**

an option to disable 2FA even when Plaintiffs know that the trusted device will not be accessible, for example, if the trusted device is not charged, does not have internet service available, or is facing disruption of service because bill is not paid for the carrier, etc.  Apple's 2FA policy is forced on to the users without taking into consideration real-life factors.  By doing so, Apple is exercising unauthorized control over Plaintiffs and the Class owned Apple Devices, access to Services and Third-Party Apps.



(Screenshots of Plaintiff Brodsky's iPhone requesting six-digit verification code.)

42.     2FA requires input of a six-digit verification code that is displayed on another trusted device (not the device that you are currently trying to log into.)  With 2FA enabled, password alone is no longer enough to access your account.  Logging in becomes a multiple-step process.  First, Plaintiffs have to enter his selected password on the device he is interested in logging in.  Second, Plaintiffs have to enter password on another trusted device to login. Third, optionally, Plaintiffs have to select a Trust or Don't Trust pop-up message response.  Fourth, Plaintiffs then have to wait to receive a six-digit verification code on that second device that is sent by an Apple Server on the internet.  Finally, Plaintiff have to input the

**SECOND AMENDED CLASS ACTION COMPLAINT**

received six-digit verification code on the first device he is trying to log into.  Each login process takes an additional estimated 2-5 or more minutes with 2FA.

**2FA Interrupts, Blocks and Intercepts Access**

43.     Upon information and belief, Apple's 2FA interrupts, blocks and intercepts access to Plaintiffs' devices.  First, login with 2FA takes an additional 2-5 minutes each time and Plaintiffs access to his own Apple devices, Services and Third-Party Apps is interrupted.  Second, 2FA does not allow for offline access to Apple devices.  Third, 2FA results in account lock-out when verification code cannot be accessed. Finally, through 2FA, Apple tracks and intercepts Plaintiffs' activities.

44.     2FA results in denial of access many times because Plaintiffs do not have access to the verification code.  When access is not granted to Apple Devices because of 2FA, Plaintiffs are virtually dispossessed (*i.e.,* constructive dispossession) of their devices.  The Apple devices lose their functionality and turn into essentially worthless bricks.  Even if the Apple device may be physically in the hands of a Plaintiff, with no ability to access that device for its functions, the device is constructively dispossessed. Apple's control over Plaintiff owned devices in such a manner is unauthorized.

45.     When Plaintiffs lack internet access, for example, on a flight or in remote locations for camping, etc., Plaintiffs cannot log on to their devices because 2FA login fails without internet access. Such a lock out is a result of 100% blocking of bandwidth and network access on the Apple devices.

46.     When Plaintiff do not have access to a trusted device, Plaintiffs face an account lockout that is 100% blocking of bandwidth and network access on the Apple devices, 100% denial of access to Apple Services and any Third-Party Apps.  Even when Apple and its Customer Support is notified, Apple does not take any remedial steps often for days to restore access.

47.     When an Apple Account with 2FA is locked, "you need a trusted device or trusted phone number to unlock your Apple ID."  (https://support.apple.com/en-us/HT204106).  When a trusted device or trusted phone number is inaccessible, the Apple ID is placed in account recovery.  Apple admits that "it might take several days or longer before you can use your account again." (https://support.apple.com/en-us/HT204921).  Account lockout of Plaintiffs Bishop and Schwartz that does not allow access to their own devices is virtual or constructive dispossession of the devices.  Not allowing access to Services including

**SECOND AMENDED CLASS ACTION COMPLAINT**

1   paid-for subscriptions and Third-Party Apps is effectively blocking the bandwidth and network usage

2   100%.

3        48.     Plaintiff Bishop, on or around January 2019, at the offset and based on an unforeseen

4   consequence outside of his control, lost access to his trusted device to receive his 2FA passcode.  Apple

5   locked him out and placed him in account recovery for days with no access to his Apple Services.  He

6   could not enable and associate his new Apple Device with his Apple ID.  Apple continued to charge him

7   for Apple Services including iTunes Music Membership and iCloud during the period of his lock out.  He

8   did not consent to 2FA and does not remember how 2FA was enabled.  He did not receive any message

9   from Apple disclosing that the update enabled 2FA including the Sample Email from Apple Support cited

10  in paragraph above and had no access to link to disable 2FA.  He called Apple's customer support multiple

11  times to disable 2FA and was denied.  By filing of this lawsuit, Plaintiff Bishop hereby revokes any

12  authorization Apple may have to continue to operate 2FA on his Apple Devices, in providing him Apple

13  Services and intermeddling with his access to Third-Party Apps.

14       49.     Plaintiff Schwartz, at the offset and based on events outside of his control, lost access to his

15  trusted device to receive his 2FA passcode.  Apple locked him out and placed him for months in account

16  recovery with no access to his Apple Device and Services. Plaintiff Schwartz made good-faith efforts to

17  redeem the situation including informing Apple of lost access to his trusted device and readiness to prove

18  his identity with other means including providing government issued identification documents.  Apple's

19  subsequent long delay in recovering his Apple account are a clear violation of Plaintiff Schwartz's rights.

20  He did not consent to 2FA and does not remember how 2FA was enabled.  He did not receive any message

21  from Apple disclosing that the update enabled 2FA including the Sample Email from Apple Support cited

22  in paragraph above and had no access to link to disable 2FA.  He called Apple's customer support multiple

23  times to disable 2FA and was denied.  By filing of this lawsuit, Plaintiff Schwartz hereby revokes any

24  authorization Apple may have to continue to operate 2FA on his Apple Devices, in providing him Apple

25  Services and intermeddling with his access to Third-Party Apps.

26       50.     Plaintiff Richardson was locked out of when he could not recollect offhand his password on

27  one of the devices on or around April, 2019.  First, he got a message that he has to wait 11 days to "try

28  again" and then sequentially he is locked out of each device requiring an iCloud sign-in.  He lost access to

**SECOND AMENDED CLASS ACTION COMPLAINT**

his downloaded and purchased data, including music.  He could no longer receive a verification code on any device with the lockout.  He called Apple Support around 4-5 times during the lockout time and also reached out to Apple Support Community, but all his efforts were futile.  He had to spend on installing new hardware and reinstalling operating system on his Mac after the account lockout that cost him $219.94 in addition to the subscription payments that were wasted.

**Intercepted Content**

51.     On information and belief, Apple also uses its 2FA to intercept content, such as photos, music and other files on Apple devices stored locally.  Further, Apple intercepts access to Third-Party Apps.  For example, Apple's 2FA intercepts Plaintiffs' use of Third-Party Apps, such as, WhatsApp, Facebook, Google Drive, and Excel.  Each time, when Plaintiffs click on a Third-Party App (*i.e.* when Plaintiffs wants to communicate with a Third-Party Application locally on own device or access Third-Party Application Server on the internet), Apple triggers 2FA to intercept and send Plaintiff activity tracking information.  Apple tracks how often or how frequently a Plaintiff goes to a particular Third-Party App.

52.     Plaintiffs want to communicate with Third-Party Apps including accessing content that is on the internet or cloud Servers hosted by a Third-Party Server.  Apple intercepts such requests and communications by interjecting 2FA in the process.  Plaintiffs do not want to communicate with an Apple 2FA Server when opening a Third-Party App.  Apple is not an authorized party of the communication in those instances when Plaintiffs are using their Apple devices to access Third-Party Apps.

53.     Plaintiff Brodsky uses Third-Party Apps, for example, when he attempts to open Amazon Prime to stream video, Amazon or Instacart for shopping online, CNN for news feed, Gmail for email messages, Apple intercepts the requests and triggers 2FA.  Plaintiff Brodsky does not want to communicate with Apple 2FA Servers when is opening Third-Party Apps.  Apple interjects itself and forces communication with Apple 2FA Servers.  On information and belief, Apple tracks the frequency and contents of Plaintiff Brodsky's Third-Party Apps access.

54.     Plaintiff Tracey uses other security tools including, for example, Brave browser, Kaspersky VPN, Google authenticator, and does not need Apple's 2FA forced on to him and his use of Apple devices, Apple Services and Third-Party Apps.  Each time he uses a Third-Party App, for example,

WhatsApp or Google Drive, Apple intercepts his requests by triggering 2FA and forcing him to communicate with Apple's 2FA Server for authentication.

55.     When Plaintiff Schwartz opens a Third-Party App, for example, Zoom for video conferencing or Linkedin to connect with his professional network, Apple intercepts his request and triggers 2FA.  He does not want to communicate with Apple's 2FA Server when he opens a Third-Party App, but is forced to by Apple.  Apple tracks his requests to open Third-Party Apps through 2FA.

56.     Each time Plaintiff Richardson attempts to open a Third-Party App, for example, OpenOffice, his request to open documents in OpenOffice is intercepted by Apple through its 2FA.  On information and belief, Apple tracks the instance Plaintiff Richardson wants to open OpenOffice App. Plaintiff Richardson is not allowed access to OpenOffice because of 2FA and has to go through communication with an Apple Server.  Plaintiff Richardson does not want to communicate with an Apple 2FA Server when he is attempting to open documents in OpenOffice.

57.     When Plaintiff Kyslowsky opens a Third-Party App, for example, Facebook, YouTube or Excel, Apple intercepts his request and forces him to communicate with Apple's 2FA Server.  Plaintiff Kyslowsky does not want to communicate with an Apple 2FA Server when he is attempting to open Third-Party Apps.

58.     On information and belief, Apple tracks Third-Party App requests to get competitive information on products.  Apple compares and contrasts, for example, how often Plaintiffs use WhatsApp versus iMessage, or iCloud versus Google Drive.

59.     By not allowing access to Apple devices offline, Apple controls access to Apple devices, Apple Services and Third-Party Apps.  Plaintiffs are denied simple pleasures and enjoyment, for example, when on a long flight without internet access or camping at a remote location of browsing through their photos and files or listening to their downloaded music offline.

**Plaintiffs Cannot Disable 2FA**

60.     Plaintiffs and the Class currently do not have an option to disable 2FA.  Apple does not, for example, allow a "Turn-off 2FA" option in the Settings.

61.     Subsequent to 2FA enablement, in some instances and not always, Apple sends an email to the owner of the Apple ID with an *unobtrusive last line* stating that the link will expire on a date that is 14

days after the date of enablement.  The restriction of 14-days infringes on Plaintiffs' rights because there should be no time-expiry on the option to disable 2FA.  Plaintiffs are not put on reasonable notice because many times the email is lost in spam and not read.  Plaintiffs and the Class did not consent to Apple's unilateral terms of disabling the option to turn-off 2FA.

> Thank you for enabling two-factor authentication for your Apple ID (a·····@gmail.com).
>
> Two-factor authentication is an additional layer of security designed to ensure that you're the only person who can access your account, even if someone knows your password. This significantly improves the security of your Apple ID and helps protect the photos, documents, and other data you store with Apple. For more information read Two-Factor Authentication for Apple ID.
>
> If you didn't enable two-factor authentication and believe someone else has access to your account, you can return to your previous security settings. This link and your Apple ID security questions will expire on October 15, 2018.

(*See* sample email based on Attorney investigation.)

62.     Plaintiffs do not remember receiving an email similar to the sample email above from Apple Support.  Plaintiffs conducted a reasonable search of their email mailboxes and did not locate an email from Apple Support with an option to disable 2FA.  Based on their recollection, Plaintiffs were never given an option to disable 2FA.

63.     Well-established practices in the industry, including those adopted by Corporations similarly situated, including, for example, Google, Microsoft and Amazon, provide options to disable 2FA without restrictions.  (*See* Exhibit D showing how to disable 2FA for different services provided by Google, Microsoft and Amazon.)

64.     Apple's assumption that Plaintiffs should always have access to the internet to receive verification codes defies common sense and logic.  Apple by not allowing access otherwise infringes on Plaintiffs and the Class members' rights of ownership of the Apple devices and paid for subscriptions.  Practices in the industry by competitors allow for such access while continuing to provide for enhanced security measures.  (*Id*.)

**SECOND AMENDED CLASS ACTION COMPLAINT**

65.     By filing of this lawsuit, Plaintiffs hereby revoke any authorization Apple may have to continue to operate 2FA on Apple Devices, in providing Apple Services and intermeddling with access to Third-Party Apps.

66.     Apple forces Plaintiffs to use 2FA that requires additional login steps each time Plaintiffs' Apple devices are powered on.  Plaintiffs are also required to use 2FA to log on to Apple Services. Plaintiffs are also required to use 2FA for Third-Party Apps on their Apple devices.  Each Plaintiff and the Class Member experiences virtual or constructive dispossession of their own devices and 100% blocking of bandwidth and network usage to access Services including paid-for subscriptions and Third-Party Apps when 2FA is triggered.

67.     Apple 2FA disables login when Plaintiffs devices are offline, *i.e.* not connected to the internet.  Access to a trusted device or trusted phone number is not always feasible, leaving Plaintiffs locked out of their own devices and without access to Apple Services.  Even with access to a trusted device or a trusted phone number, Plaintiffs login process with 2FA is cumbersome and delay-ridden. Apple is continuously and on an ongoing basis making Plaintiffs own devices inaccessible for intermittent periods of time.

68.     Apple tracks Plaintiffs' activities that includes content on what App or Service the user wants to currently access through 2FA that requires connecting with Apple's Servers on the internet. When 2FA is not enabled, Plaintiffs can login to their own devices using a method local to the device that does not need access to the internet or Apple Servers.  With such a login, Apple does not track Plaintiffs' activities.

69.     Apple's conduct in creating and enforcing its 2FA policy has directly harmed and injured Plaintiffs and the Class.  (*See* <u>Exhibit E</u>, showing comments from Apple users on 2FA.)

70.     The class period began when Apple introduced 2FA in 2015 subject to any applicable statute of limitations for a given claim.

## CLASS ALLEGATIONS

71.     Plaintiffs brings this action pursuant to Fed. R. Civ. P. 23(a),(b)(2), and (b)(3), on behalf of themselves and the following proposed Class, nationwide, or in the alternative, for their respective states of Residence:

**SECOND AMENDED CLASS ACTION COMPLAINT**

All persons or entities in the United States who own or owned an Apple Watch, iPhone, iPad, MacBook, or iMac or use Apple Services that have enabled two-factor authentication ("2FA"), subsequently want to disable 2FA, and are not allowed to disable 2FA.

72.     Plaintiff Tracey also seeks to represent the following Subclass-1:

All persons or entities in the United States who own or owned an Apple Watch, iPhone, iPad, MacBook, or iMac or use Apple Services that enabled two-factor authentication ("2FA") as a mandated step for a software upgrade, subsequently want to disable 2FA, and are not allowed to disable 2FA.

73.     Plaintiffs Bishop, Schwartz and Richardson also seeks to represent the following Subclass-2:

All persons or entities in the United States who own or owned an Apple Watch, iPhone, iPad, MacBook, or iMac or use Apple Services that have enabled two-factor authentication ("2FA"), subsequently lost access to their trusted device or means to receive 2FA codes, and then want to disable 2FA, are not allowed to disable 2FA and are locked out of their devices and Services.

74.     Plaintiffs Richardson and Kyslowsky also seeks to represent the following Subclass-3:

All senior persons in the United States who own or owned an Apple Watch, iPhone, iPad, MacBook, or iMac or use Apple Services that have enabled two-factor authentication ("2FA"), subsequently want to disable 2FA and are not allowed to disable 2FA.

75.     Excluded from the proposed class are Apple, its employees, officers, directors, legal representatives, heirs, successors, subsidiaries and affiliates, and the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons who make a timely election to be excluded from the proposed class, subclass-1, subclass-2 and subclass-3.

76.     California's substantive laws including common law apply to every member of the Class, regardless of where in the United States the Class Member resides based on Apple's "Controlling Law" provisions in its Terms and Conditions agreements for all of its products and services.  (*See*, for example, terms and use agreements at https://www.apple.com/legal/sla/.)

77.     Nationwide certification is appropriate here for federal claims that apply uniformly nationwide.  Most states, nationwide, have the substantively same laws for common law claims at issue here, *i.e.* trespass of chattels and unjust enrichment claims.  Therefore, applying California law for common law claims is appropriate here because the differences of application will not be substantive.  To the extent California Privacy laws are not available in other states, application to a nationwide class is appropriate here for Apple when Apple is headquartered and located in California and the conduct giving rise to the claims occurs primarily in California.

**SECOND AMENDED CLASS ACTION COMPLAINT**

78.     The claims are based on Apple's acts that involve technology that is created, designed, operated and controlled in California.  Regardless of the physical location of the Apple devices for Plaintiffs and the Class outside of California, Apple's acts that control, interfere, intercept and intermeddle are operated and controlled in California.  Nationwide class certification is appropriate under these circumstances.  *See Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 590 (9th Cir. 2012).

79.     Certification of Plaintiffs claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence they would use to prove those elements in individual action alleging the same claims.

80.     This action meets all applicable standards of Fed. R. Civ. P. 23 for class certification, in that Plaintiffs can demonstrate the elements delineated below.

81.     <u>Numerosity</u>. The members of the proposed Class and Subclasses are so numerous and geographically dispersed that individual joinder of all proposed class members is impracticable. *See* Fed. R. Civ. P. 23(a)(1).  While Plaintiffs believe that there are millions of members of the proposed class, the precise number of Class members is unknown, but may be ascertained from Apple's books and records.  Apple maintains a list of users that have enabled 2FA.  Apple including its Apple Stores and Apple Support routinely receive requests from users to disable 2FA and are told by Apple in response that disabling 2FA is not an option available to the user.

82.     To the extent a Class Member has been passive based on reading publicly available postings on this topic and not made a request to disable 2FA that can be traced to Apple's books and records, Apple can easily send out a request for an online survey to all users of 2FA to ascertain whether that particular Class Member wants an option to disable 2FA and whether that particular Class Member wants to opt-out of the Class.

83.     Applying a reasonable and prudent person standard to the users of 2FA under the same or similar circumstances, each user would qualify to be a Class Member requesting the right to enable or disable Apple's 2FA at will.  Any reasonable and prudent person under the same or similar circumstances wants to have the flexibility to use additional security measures on the Apple Devices and/or Services customized to his or her daily needs.  Any reasonable and prudent person would want to access his Apple Devices when not connected to the internet.  Any reasonable and prudent person would not want his

**SECOND AMENDED CLASS ACTION COMPLAINT**

account locked up for a lengthy period of time subsequent to losing access to a trusted device or means to receive 2FA passcodes.

84. Further, especially, a senior and retired reasonable and prudent person would not knowingly authorize complexity of Apple's 2FA in use and configuration and incur additional expenses to reinstall existing documents and content. Many senior reasonable prudent persons are challenged with use of technology and not giving a senior reasonable prudent person an option to disable 2FA infringes their rights.

85. Class members may be notified of the pendency of this action by recognized, court approved notice dissemination methods, which may include U.S. mail, e-mail, internet postings, and/or published notice.

86. Commonality and Predominance. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. *See* Fed. R. Civ. P. 23(a)(2) and (b)(3). These include, without limitation:

   a. Whether Apple engaged in the conduct alleged in this Complaint;

   b. Whether Apple designed, advertised, marketed, distributed, sold or otherwise placed Apple devices into the stream of commerce in the United States;

   c. Whether Apple's two-factor authentication policy regarding not allowing users to disable two-factor authentication once enabled and fourteen days have lapsed is coercive and extraneous for a user to log on to his own personal device and/or access Apple Services and Third-Party Apps;

   d. Whether Apple's tracking of Plaintiffs' and the Class Members' login activities is lawful;

   e. Whether Plaintiffs and members of the Class are injured and harmed directly by inaccessibility to their own devices and Apple Services by Apple's conduct of creating and enforcing its 2FA policy;

   f. Whether Plaintiffs and members of the Class are entitled to damages due to Apple's conduct as alleged in this Complaint, and if so, in what amounts; and

g.      Whether Plaintiffs and members of the Class are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint.

87.     _Typicality._ Plaintiffs' claims are typical of the putative class members' claims because, among other things, all such Class members were comparably injured through Apple's wrongful conduct as described above. *See* Fed. R. Civ. P. 23(a)(3).  Apple's creation and enforcement of its 2FA policy is uniform for all Plaintiffs and Class Members.

88.     _Adequacy._ Plaintiffs are adequate proposed class representative because their interests do not conflict with the interests of the other members of the proposed Class they seek to represent; because they have retained counsel competent and experienced in complex class action litigation; and because they intend to prosecute this action vigorously. The interests of the proposed class will be fairly and adequately protected by Plaintiffs and their counsel. *See* Fed. R. Civ. P. 23(a)(4).

89.     _Declaratory and Injunctive Relief._ Apple has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the proposed Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the proposed Class as a whole. *See* Fed. R. Civ. P. 23(b)(2).  Apple's wrongful conduct alleged herein is not a result of a one-time accidental software bug, but is grounded in Apple's policy that is openly promoted and touted.  Apple's 2FA policy was intentionally created.  Apple's 2FA policy is intentionally enforced on all users.  Plaintiffs injuries are real, immediate and ongoing.  Plaintiffs seek injunctive and declaratory relief from Apple.

90.     _Superiority._ A class is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and putative Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Apple, so it would be impracticable for members of the proposed Classes to individually seek redress for Apple's wrongful conduct.

91.     Applying the principles of equity or balance of equities, expecting an individual Plaintiff who is at a disadvantage with limited resources and spending capacity, and with minimal negotiating power, if any, to litigate claims against Apple, a multi-billion corporation that has immense resources and

deep pockets would be unfair.  Class actions are a necessary and essential means to provide for public-interest litigations with checks and balances to curtail the growing power of private corporations including Apple.

92.    In the interest of public policy and recent trends of privacy concerns showing tracking and data collection misuse by Corporations, the Court should recognize the right of Plaintiffs and Class Members to use their devices and services on their own terms.  While Apple touts to be a proponent of individual privacy rights, on information and belief, Apple's 2FA policy in the guise of providing additional security allows Apple to track an individual user login activity.

93.    Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and it increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. *See* Fed. R. Civ. P. 23(b)(3).

## VIOLATIONS ALLEGED

## COUNT I

## TRESPASS TO PERSONAL PROPERTY (CHATTELS)

94.    Plaintiffs and Class Members incorporate and reallege all allegations set out in the preceding paragraphs including paragraphs 1 through 93, above.

95.    Plaintiffs are residents of the United States and request application of common law of California for their trespass to personal property claim.  In the alternative, Plaintiff Brodsky brings trespass to personal property claim from common law of New York.  Plaintiff Tracey brings trespass to personal property claim from California.  Plaintiff Bishop brings trespass to personal property claim from Ohio.  Plaintiff Schwartz brings trespass to personal property claim from Pennsylvania.  Plaintiff Richardson brings trespass to personal property claim from Colorado.  Plaintiff Kyslowsky brings trespass to personal property claim from Texas.

96.    Apple has knowingly and intentionally and without authorization interfered with Plaintiffs and Class Members' possessory interest of their one or more Apple devices by requiring an extraneous login process through two-factor authentication that is imposed on Plaintiffs and Class Members without

authorization or consent.  In addition to the delay in logging process, when Plaintiffs have network access, Apple interferes in Plaintiffs' possessory interest when Plaintiffs' want to access Apple devices with no internet or network access.

97.     Apple's unauthorized use has directly and proximately resulted in damages to Plaintiffs and Class Members by continuous, systematic and ongoing loss of use for the delay in logging in process with 2FA and total lock out when there is not internet or network access.  Plaintiffs and Class Members on a continuous and ongoing basis are injured with Apple's intermeddling with or use of Plaintiffs and Class Members' own devices.  Apple's extraneous login process through 2FA causes virtual or constructive dispossession of Plaintiffs and Class Members' own devices.  Plaintiffs and Class Members have suffered and continue to suffer actual damages through loss of use of their own Apple devices.

98.     Apple has caused injury to Plaintiffs and Class Members' rights to choose the level of security for Plaintiffs and Class Members own devices.  Plaintiffs and Class Members' rights to freely enjoy and use their own personal devices has been injured.  Plaintiffs and Class Members have suffered both economic and emotional distress arising from Apple's act of intentionally requiring 2FA for login. Plaintiffs and Class Members have a right of recovery of damages for the interference with the possession of their Apple devices.

99.     Apple is forcing Plaintiffs and Class Members to be locked out of their own devices with 100% loss of use, blocking its memory and processors, occupying its network usage and making inaccessible any other programs or applications.  Apple is diminishing the use of, value, speed, capacity and/or capabilities of Plaintiffs and Class Members own Apple devices enabled with 2FA.

100.     Apple's operation of 2FA constitutes trespass, nuisance and an interference with Plaintiffs and Class Members' chattels, i.e. their Apple devices.

## COUNT II

## VIOLATION OF THE INVASION OF THE PRIVACY ACT

## CALIFORNIA PENAL CODE § 630, *et seq.*

101.     Plaintiffs and Class Members incorporate and reallege all allegations set out in the preceding paragraphs including paragraphs 1 through 100, above.

102.     Plaintiffs and Class Members did not consent to Apple's actions in intercepting and making inaccessible access to Apple Services and Third-Party Apps by interjecting 2FA.  Plaintiffs and Class Members' use of Apple Services and Third-Party Apps on their own personal devices is a personal electronic exchange.  Apple, by injecting itself in the process by requiring extra logging steps, has acquired without authorization confidential electronic communication owned by Plaintiffs and Class Members.

103.     When Plaintiffs attempt to access content on Third-Party Apps, Plaintiffs desire to communicate directly and without interference with content that is located locally on their own devices or on the internet hosted by Third-Party App Servers.  Plaintiffs are not communicating with Apple and do not want to communicate with Apple's 2FA Servers.  On information and belief, by interjecting an extra step of 2FA, Apple tracks Plaintiffs request, which particular Third-Party App is requested, frequency of invoking that Third-Party App compared to an equivalent Apple Product and any other associated content with the Third-Party App.

104.     Apple has perpetrated, caused and or directly participated in the interception, reading and/or learning the contents of electronic communication between Plaintiff, Class Members, its own Web or Cloud based services and Third-Party Apps.

105.     Unless restrained and enjoined, Apple will continue to commit such acts. Pursuant to Section 637.2 of the California Penal Code, Plaintiffs and the Class have been injured by the violations of California Penal Code section 631. Wherefore, Plaintiff, on behalf of himself and on behalf of a similarly situated Class of consumers, seek damages and injunctive relief.

## COUNT III

## VIOLATION OF THE COMPUTER CRIME LAW ("CCL")

## CALIFORNIA PENAL CODE § 502

106.     Plaintiffs and Class Members incorporate and reallege all allegations set out in the preceding paragraphs including paragraphs 1 through 105, above.

107.     Plaintiffs and Class Members have not authorized Apple to run 2FA on their own devices. Apple's access of Plaintiffs' devices for 2FA is unauthorized.  Any use of 2FA should be optional, not mandatory.

108.    Apple has violated California Penal Code section 502 by knowingly forcing 2FA and interfering with Plaintiffs' and Class Members' logging process to their own devices and access to Apple Services and Third-Party Apps.

109.    Under section 502(c)(1), Apple knowingly and without permission has altered the computer system in order to wrongfully control Plaintiffs' and Class Members' personal computer system devices including smartwatch, smartphone, tablet, laptop and desktop computers.

110.    Under section 502(c)(3), Apple knowingly and without permission has used and caused to be used Plaintiffs' and Class Members' Apple Services and Third-Party Apps configured on their Apple devices.

111.    Under section 502(c)(4), Apple knowingly and without permission has added the 2FA program to Plaintiffs and Class Members personal computer system devices including smartwatch, smartphone, tablet, laptop and desktop computers.

112.    Under section 502(c)(5), Apple knowingly and without permission has disrupted access to Plaintiffs and Class Members personal computer system devices including smartwatch, smartphone, tablet, laptop and desktop computers.  Apple knowingly and without permission has disrupted Plaintiffs and Class Members access to computer services including Apple Services and Third-Party Apps.

113.    Under section 502(c)(7), Apple knowingly and without permission has accessed Plaintiffs and Class Members personal computer system devices including smartwatch, smartphone, tablet, laptop and desktop computers.

114.    Plaintiffs and Class Members have also suffered irreparable injury from these unauthorized acts of disclosure in that their information has been harvested, retained, and used by Apple, and continues to be retained and used by Apple; due to the continuing threat of such injury and, Plaintiffs and Class Members have no adequate remedy at law, entitling them to injunctive relief.

115.    Plaintiffs and Class Members have additionally suffered loss by reason of these violations, including, without limitation, violation of the right of privacy.

116.    As a direct and proximate result of Defendant's unlawful conduct within the meaning of California Penal Code section 502, Defendant has caused loss to Plaintiffs and Class Members in an

**SECOND AMENDED CLASS ACTION COMPLAINT**

amount to be proven at trial. Plaintiffs and Class Members are also entitled to recover their reasonable attorneys' fees pursuant to California Penal Code section 502(e).

117.     Plaintiffs and the Class Members seek compensatory damages, in an amount to be proven at trial, and injunctive or other equitable relief.  Plaintiffs and Class Members have suffered irreparable and incalculable harm and injuries from Defendant's violations.  The harm will continue unless Defendant is enjoined from further violations of this section. Plaintiffs and Class Members have no adequate remedy at law.

118.     Apple's unlawful access to Plaintiffs and Class Members' devices and electronic communications has caused them irreparable injury.  Unless restrained and enjoined, Apple will continue to commit such acts.  Plaintiffs and Class Members' remedy at law is not adequate to compensate it for these inflicted injuries, entitling Plaintiffs and Class Members to remedies including injunctive relief as provided by California Penal Code section 502(e).

## COUNT IV

## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

## 18 U.S.C. § 1030, *et seq.*

119.     Plaintiffs and Class Members incorporate and reallege all allegations set out in the preceding paragraphs including paragraphs 1 through 118, above.

120.     Defendant intentionally accessed through the 2FA feature Plaintiffs' and Class Members' computers, which were computers used for interstate commerce and/or communications; Defendant did so without authorization and/or exceeding authorized access to such computers; and Defendant thereby obtained information, including time and location of logging to devices and request to access Apple Service and/or Third-Party App, from such protected computers in violation of Title 18, United States Code, Section 1030(a)(2)(C).

121.     Further, Defendant knowingly caused the transmission of information, i.e. sending and receiving of six-digit verification code on another device, and as a result of such conduct, intentionally caused damage of locking out the device without authorization, to a protected computer in violation of Title 18, United States Code, Section 1030(a)(5)(A).

**SECOND AMENDED CLASS ACTION COMPLAINT**

122.     Defendant intentionally accessed Plaintiffs' and Class Members' protected computers without authorization by triggering use of 2FA, and as a result of such conduct, recklessly caused damage, *i.e.* locking out or making inaccessible a computer system, in violation of Title 18, United States Code, Section 1030(a)(5)(B).

123.     Defendant intentionally accessed Plaintiffs' and Class Members' protected computers without authorization, and as a result of such conduct, caused damage and loss of use.

124.     Apple's conduct in automatically enabling 2FA without giving any option for Plaintiffs and Class Members to opt-out on Plaintiffs and Class Members own devices constituted a single act for purposes of the Computer Fraud and Abuse Act.

125.     Apple has diminished Plaintiffs and Class Members' computer devices performance and capabilities. Each Plaintiff owns Apple devices that cost in the aggregate ranges from at least $2,000 to $10,000.  Each Plaintiff has paid for subscriptions for Apple Services and Third-Party Apps that ranges from at least $5 to $1000 per month.  There is a cost and harm associated with each Plaintiff's use of Third-Party Apps when interfered with by Apple even when they are installed for free.  Apple's interference has diminished the access of these for an aggregated loss and damage of at least $5,000 during a one-year period.

126.     Apple has collected personal information that has economic value to the Plaintiffs and Class Members, the unauthorized collection of which resulted in the deprivation or diminution of such economic value, causing Plaintiffs and Class Members to sustain aggregated loss and damage, including economic loss with an aggregated value of at least $5,000 during a one-year period.

127.     Further, Defendant's access to Plaintiffs and Class Members' protected computers and electronic communications has caused Plaintiffs and Class Members irreparable injury. Unless restrained and enjoined, Defendant will continue to commit such acts.

128.     Further Plaintiffs and Class Members' remedy at law is not adequate to compensate them for harm to them, entitling Plaintiffs and Class Members to remedies that include injunctive relief as provided by Title 18, United States Code, Section 1030(g).

**SECOND AMENDED CLASS ACTION COMPLAINT**

1

<b><u>COUNT V</u></b>

2

<b><u>UNJUST ENRICHMENT</u></b>

3      129.    Plaintiffs and Class Members incorporate and reallege all allegations set out in the

4    preceding paragraphs including paragraphs 1 through 128, above.

5      130.    Plaintiffs are residents of the United States and request application of common law of

6    California for their unjust enrichment claim.  In the alternative, Plaintiff Brodsky brings unjust enrichment

7    claim from common law of New York.  Plaintiff Tracey brings unjust enrichment claim from California.

8    Plaintiff Bishop brings unjust enrichment claim from Ohio.  Plaintiff Schwartz brings unjust enrichment

9    claim from Pennsylvania.  Plaintiff Richardson brings unjust enrichment claim from Colorado.  Plaintiff

10   Kyslowsky brings unjust enrichment claim from Texas.

11     131.    Apple is liable under quasi-contract claim seeking restitution.  Plaintiffs have a contract

12   with Apple pursuant to the Terms of Use of Apple Devices and Services that is breached by Apple's

13   interference as alleged in the paragraphs above.  Plaintiffs have paid the full amount to own the Apple

14   Devices and paid for fully the subscriptions for Apple Services and Third-Party Apps.  Plaintiffs use of

15   Apple Devices, Services and Third-Party Apps is interfered with.

16     132.    Through the conduct described herein, including all the claims brought forth in the

17   paragraphs above and to the extent required for the claim or to the extent required in the alternative,

18   Defendant received and retained tangible benefits at the expense of Plaintiffs and the Class; on information

19   and belief, including money paid for Defendant's products and Defendant, directly or indirectly, has

20   received and retains information regarding online communications and activities of Plaintiffs and the

21   Class.  Defendant appreciates or has knowledge of said benefits.

22     133.    Under principles of equity and good conscience, Defendant should not be permitted to

23   retain the information and/or revenue it acquired through its unlawful conduct.  All funds, revenues, and

24   benefits Defendant has unjustly received as a result of its actions rightfully belong to Plaintiffs and the

25   Class.

26

<b><u>PRAYER FOR RELIEF</u></b>

27     WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, pray for judgement

28   against Defendant as follows:

<b>SECOND AMENDED CLASS ACTION COMPLAINT</b>

1.      Certify this case as a Class action on behalf of the Class and Sub-Classes defined above, appoint Plaintiffs as Class representative, and appoint their counsel as Class counsel;

2.      Declare that the actions of Defendant, as set out above, violate the following:

      i.      Trespass to Personal Property (Chattels);

      ii.      California's Invasion of Privacy Act, California Penal Code § 630;

      iii.      California's Computer Crime Law, Penal Code § 502;

      iv.      Computer Fraud and Abuse Act, 18 U.S.C. § 1030; and

      v.      Unjust Enrichment;

3.      As applicable to the Classes *mutatis mutandis*, awarding injunctive and equitable relief including, *inter alia*: (i) prohibiting Defendant from engaging in the acts alleged above; (ii) requiring Defendant to disgorge all of its ill-gotten gains to Plaintiffs and the other Class Members, or to whomever the Court deems appropriate; (iii) requiring Defendant to delete all data surreptitiously or otherwise collected through the acts alleged above; (iv) requiring Defendant to provide Plaintiffs and the other Class Members a means to easily and permanently decline any participation in two-factor authentication; (v) awarding Plaintiffs and Class Members full restitution of all benefits wrongfully acquired by Defendant by means of the wrongful conduct alleged herein; and (vi) ordering an accounting and constructive trust imposed on the data, funds, or other assets obtained by unlawful means as alleged above, to avoid dissipation, fraudulent transfers, and/or concealment of such assets by Defendant;

4.      Award damages, including statutory damages where applicable, to Plaintiffs and Class Members in an amount to be determined at trial;

5.      Award restitution against Defendant for all money to which Plaintiffs and the Classes are entitled in equity;

6.      Restrain Defendant, its officers, agents, servants, employees, and attorneys, and those in active concert or participation with them from continued access, collection, and transmission of Plaintiffs and Class Members' personal information via preliminary and permanent injunction;

7.      Award Plaintiffs and Class Members:

      i.      their reasonable litigation expenses and attorneys' fees;

      ii.      pre- and post-judgment interest, to the extent allowable;

**SECOND AMENDED CLASS ACTION COMPLAINT**

iii.     restitution, disgorgement and/or other equitable relief as the Court deems proper;

iv.     compensatory damages sustained by Plaintiffs and all others similarly situated as a result of Defendant's unlawful acts and conduct;

v.     statutory damages; and

vi.     permanent injunction prohibiting Defendant from engaging in the conduct and practices complained of herein;

8.     For such other and further relief as this Court may deem just and proper.


Dated:  September 26, 2019                    **ONE LLP**


                                        By:  /s/ Deepali A. Brahmbhatt
                                              Peter R. Afrasiabi
                                              Deepali A. Brahmbhatt
                                              John E. Lord

                                              Attorneys for Plaintiffs
                                              Jay Brodsky, Brian Tracey, Alex Bishop,
                                              Brendan Schwartz, William Richardson
                                              and John Kyslowsky

**SECOND AMENDED CLASS ACTION COMPLAINT**

1

**DEMAND FOR JURY TRIAL**

2

Plaintiffs and the Class Members hereby demand a trial by jury of all issues so triable.

3

4

Dated:  September 26, 2019                    **ONE LLP**

5

6

By:  <u>/s/ Deepali A. Brahmbhatt</u>

Peter R. Afrasiabi

7

Deepali A. Brahmbhatt

John E. Lord

8

9

Attorneys for Plaintiffs

Jay Brodsky, Brian Tracey, Alex Bishop,

10

Brendan Schwartz, William Richardson

and John Kyslowsky

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECOND AMENDED CLASS ACTION COMPLAINT**

# EXHIBIT A

DUPLICATE RECEIPT



**Apple Fifth Avenue**
767 Fifth Avenue
New York, NY 10153
fifthavenue@apple.com
212-336-1440
DCA License # 1226523 & 1226517
www.apple.com/retail/fifthavenue

February 12, 2011  05:18 PM

---

**MacBook Air 11.6/1.4/2/128FLASH**

$ 1,199.00

Part Number: MC506LL/A
Serial Number: C02F37H0DDQW
Return Date: Feb. 26, 2011

For Support, Visit: APPLE.COM/SUPPORT

**APP FOR MB/MB AIR/13 MB PRO**

$ 249.00

Part Number: S3191LL/A
Agreement Number: 97000000807397N
Plan End Date: Feb. 12, 2014
Sales Associate ID: 294001981
Serial Number: C02F37H0DDQW

This plan is registered automatically.
Verify your coverage at
apple.com/support/applecare/ww/

Terms & Conditions:
You may cancel at any time (restrictions apply). By purchasing,
you agree to receive the contract terms electronically by
visiting http://www.apple.com/legal/sales-support/applecare/
appmacnaen.html

For Support, Visit: support.apple.com

**MobileMe Individual**

$ 99.00

Part Number: MC660Z/A
Return Date: Feb. 26, 2011

For Support, Visit: APPLE.COM/SUPPORT

Business Discount

($ 30.00)

---

| | | |
|---|---|---|
| Sub-Total | | $ 1,517.00 |
| Tax@8.88% | | $ 134.63 |
| Total | | $ 1,651.63 |
| Payment Method | | |
| Amount Paid Via Cash | | $ 1,700.00 |



| Apr 08 2017 | Order Status: Complete 2 items | Order Number: ███ | Order Summary | |
|---|---|---|---|---|
| | **Billing Address** | | Product Total | $709.99 |
| | Jay Brodsky ███ | | Charges Shipping | FREE |
| | | | Sales Tax, Fees & Surcharges | $69.00 |
| | | | **Order Total** | **$868.99** |
| | **Payment Method** ███ | $868.99 | | |

## Item Details

| Apple · MacBook Air® · 13.3" Display · Intel Core i5 · 8GB Memory · 128GB Flash Storage · Silver | **Shipping Address** | **Item Total** | $868.99 |
|---|---|---|---|
| Model: MM0F2LL/A Sku: 6443034 Quantity: 1 | Jay Brodsky ███ | Product Price | $799.99 |
| | | Sales Tax, Fees & Surcharges | $69.00 |

**Status: Delivered**

| Model: KASPERSKY Sku: 1050006144 Quantity: 1 | **Digital Download** E-mail: ███ | **Item Total** | $0.00 |
|---|---|---|---|
| | | Product Price | $0.00 |
| | | Sales Tax, Fees & Surcharges | $0.00 |

**Status: Ready for Download**

It's available now in your digital library.

# EXHIBIT B

**From:**     Apple <no_reply@email.apple.com>
**Sent:**     Sunday, April 14, 2019 1:07 AM
**To:**       ███████████████████
**Subject:**  Your receipt from Apple.



# Receipt

APPLE ID
███████████████

DATE
Apr 13, 2019

ORDER ID
███████████

DOCUMENT NO.
███████████

BILLED TO


| iTunes Store | PRICE |
|---|---|



**By Your Side**     **$1.99**
Sean Rowe
Music Video
iMac
Write a Review | Report a Problem

| | |
|---|---|
| Subtotal | **$1.99** |
| Tax | **$0.08** |

| TOTAL | **$2.07** |
|---|---|



# Send money with a message.

Use Apple Pay to send and receive money. It's as simple as sending a text.

Learn More about Apple Pay Cash

Get help with subscriptions and purchases. Visit Apple Support.

Learn how to manage your password preferences for iTunes, Apple Books, and App Store purchases.



Apple ID Summary • Terms of Sale • Privacy Policy

Copyright © 2019 Apple Inc.
All rights reserved



# Receipt

| APPLE ID | |
|---|---|
| ██████████ | |

| ORDER ID | DOCUMENT NO. |
|---|---|
| ████████ | ██████████ |

**DATE**
Apr 13, 2019

**BILLED TO**

| iTunes Store | PRICE |
|---|---|

**By Your Side** — $1.99
Sean Rowe
Music Video
iMac
Write a Review | Report a Problem

| | |
|---|---|
| Subtotal | $1.99 |
| Tax | $0.08 |

**TOTAL** **$2.07**



# Send money with a message.

Use Apple Pay to send and receive money. It's as simple as sending a text.

Learn More about Apple Pay Cash

Get help with subscriptions and purchases. Visit Apple Support.

Learn how to manage your password preferences for iTunes, Apple Books, and App Store purchases.



Apple ID Summary • Terms of Sale • Privacy Policy

Copyright © 2019 Apple Inc.
All rights reserved

3

EXHIBIT C

| | |
|---|---|
| **From:** | service@paypal.com |
| **Sent:** | Wednesday, July 17, 2019 9:43 AM |
| **To:** | John Kyslowsky |
| **Subject:** | Receipt for Your Payment to King.com Limited |



*Jul 17, 2019 11:42:54 CDT*

Transaction ID: ███████████████

**Hello John Kyslowsky,**

**You sent a payment of $2.99 USD to King.com Limited (donotreplytoking@king.com)**

It may take a few moments for this transaction to appear in your account.

**Merchant**

King.com Limited

donotreplytoking@king.com

+356 0203451 x5506

**Instructions to merchant**

You haven't entered any instructions.



| Description | Unit price | Qty | Amount |
|---|---|---|---|
| | $2.99 USD | 1 | $2.99 USD |
| | **Subtotal** | | $2.99 USD |
| | **Total** | | $2.99 USD |
| | **Payment** | | $2.99 USD |

Payment sent to donotreplytoking@king.com

Payment sent from ████████████████

**Funding Sources Used (Total)**

██████████████  $2.99 USD

**Issues with this transaction?**

You have 180 days from the date of the transaction to open a dispute in the Resolution Center.

Questions? Go to the Help Center at www.paypal.com/help.

**ADDITIONAL INFORMATION**

After first contacting PayPal, Inc. at 1-888-221-1161, if you still have an unresolved complaint regarding the company's money transmission or currency exchange activity, please direct your complaint to: Texas Department of Banking, 2601 North Lamar Boulevard, Austin, Texas 78705, 1-877-276-5554 (toll free), www.dob.texas.gov

Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance, log in to your PayPal account and click **Help** in the top right corner of any PayPal page or please contact us toll free at 1-888-221-1161.

You can receive plain text emails instead of HTML emails. To change your Notifications preferences, log in to your account, go to your Profile, and click **My settings**.

Copyright © 1999-2019 PayPal, Inc. All rights reserved. PayPal is located at 2211 N. First St., San Jose, CA 95131.

PayPal PPX001066:1.1:9ac5399adc2eb

# EXHIBIT D



**amazon**
Try Prime

All

Deliver to

Best Sellers   Gift Ideas   New Releases

EN

Hello, Sign in
Account & Lists

Orders

Try Prime

Cart

Deals on **school supplies**

## Help & Customer Service

‹ All Help Topics

**Account Settings**

"Keep Me Signed In" Checkbox
About Closing Your Account
About Mobile Phone Number Accounts
About SMS Verifica ion for Mobile Phone Number Accounts
Remove an Adult from Your Amazon Household
About Amazon Households
Digital Content & Personalisation Resources
About Two-Step Verification
Archive an Order
Turning On Two-Step Verification
Changing Two-Step Verification Settings
Disabling Two-Step Verification
Create a Household
Signing in with Two-Step Verification
Two-Step Verification Account Recovery
Teen Logins

Managing Your Account  ›  Account Settings ›

# Disabling Two-Step Verification

Here's how to disable Amazon's Two-Step Verification, a feature that requires you to enter a unique security code in addition to your password on computers and devices that aren't trusted.

To disable Two-Step Verification:

1. Go to **Advanced Security Settings.**
2. Click **Disable Two-Step Verification** and you will be prompted for the security code.
3. Enter the code that was sent to your phone number or generated through the authenticator app and click **Verify code.**

Was this information helpful?



**Quick solutions**

Your Orders
Track or cancel orders

Returns & Refunds
Exchange or return items

Manage Prime
Cancel or view benefits

Payment Settings
Add or edit payment methods

Carrier Info
Shipping carrier information

Account Settings
Change email or password

Just Ask Alexa
Try saying, "Alexa, call Customer Service"

or

Contact Us

Back to top

## Get to Know Us

Careers

Blog

About Amazon

Press Center

Investor Relations

Amazon Devices

Amazon Tours

## Make Money with Us

Sell on Amazon

Sell Under Private Brands

Sell on Amazon Handmade

Sell Your Services on Amazon

Sell on Amazon Business

Sell Your Apps on Amazon

Become an Affiliate

Advertise Your Products

Self-Publish with Us

› See More

## Amazon Payment Products

Amazon Rewards Visa Signature Cards

Amazon.com Store Card

Amazon Business Card

Amazon.com Corporate Credit Line

Shop with Points

Credit Card Marketplace

Reload Your Balance

Amazon Currency Converter

## Let Us Help You

Your Account

Your Orders

Shipping Rates & Policies

Amazon Prime

Returns & Replacements

Manage Your Content and Devices

Amazon Assistant

Help

**amazon** | English | United States

| | | | | | | |
|---|---|---|---|---|---|---|
| **Amazon Music** Stream millions of songs | **Amazon Advertising** Find, attract, and engage customers | **Amazon Drive** Cloud storage from Amazon | **6pm** Score deals on fashion brands | **AbeBooks** Books, art & collectibles | **ACX** Audiobook Publishing Made Easy | **Alexa** Actionable Analytics for the Web |
| **Sell on Amazon** Start a Selling Account | **Amazon Business** Everything For Your Business | **AmazonFresh** Groceries & More Right To Your Door | **AmazonGlobal** Ship Orders Internationally | **Home Services** Handpicked Pros Happiness Guarantee | **Amazon Inspire** Digital Educational Resources | **Amazon Rapids** Fun stories for kids on the go |
| **Amazon Web Services** Scalable Cloud Computing Services | **Audible** Listen to Books & Original Audio Performances | **Book Depository** Books With Free Delivery Worldwide | **Box Office Mojo** Find Movie Box Office Data | **ComiXology** Thousands of Digital Comics | **CreateSpace** Indie Print Publishing Made Easy | **DPReview** Digital Photography |
| **East Dane** Designer Men's Fashion | **Fabric** Sewing, Quilting & Knitting | **Goodreads** Book reviews & recommendations | **IMDb** Movies, TV & Celebrities | **IMDbPro** Get Info Entertainment Professionals Need | **Kindle Direct Publishing** Indie Digital Publishing Made Easy | **Prime Now** FREE 2-hour Delivery on Everyday Items |
| **Amazon Photos** Unlimited Photo Storage Free With Prime | **Prime Video Direct** Video Distribution Made Easy | **Shopbop** Designer Fashion Brands | **Amazon Warehouse** Great Deals on Quality Used Products | **Whole Foods Market** America's Healthiest Grocery Store | **Woot!** Deals and Shenanigans | **Zappos** Shoes & Clothing |
| **Ring** Smart Home Security Systems | **eero WiFi** Stream 4K Video in Every Room | **Neighbors App** Real-Time Crime & Safety Alerts | **Subscribe with Amazon** Discover & try subscription services | **PillPack** Pharmacy Simplified | **Amazon Renewed** Like-new products you can trust | **Amazon Second Chance** Pass it on, trade it in, give it a second life |

Conditions of Use    Privacy Notice    Interest-Based Ads    © 1996-2019, Amazon.com, Inc. or its affiliates

Google Account Help



Help Center          Community

# Turn off 2-Step Verification

Your account is more secure when you need a password and a verification code to sign in. If you remove this extra layer of security, you will only be asked for a password when you sign in. It might be easier for someone to break into your account.

Computer     Android     iPhone & iPad

1. Open your Google Account        .
2. In the "Security" section, select 2-Step Verification. You might need to sign in.
3. Select Turn off.
4. A pop-up window will appear to confirm that you want to turn off 2-Step Verification. Select Turn off.

Destroy all the backup codes that you've saved for signing in to this account.

## Revoking app passwords you no longer use

If you used app passwords to let apps access your Google Account, you may see errors when you turn off 2-Step verification. If this happens, re-enter your Google Account password.

We recommend you revoke your app passwords:

1. Sign in to your Google Account        .
2. In the "Security" section, select Signing in to Google.
3. Choose App passwords. You might need to sign in.
4. Next to an application or device, select Remove 🗑 .

The next time you sign in to the app or device, you'll be asked to enter your Google Account username and password. If an app doesn't ask right away, it might take longer to recognize that its app password has been revoked.

Was this helpful?

Yes          No

2-Step Verification

Turn on 2-Step Verification

Turn off 2-Step Verification

Signing in with 2-Step Verification

Use a security key for 2-Step Verification

Install Google Authenticator

Add or remove trusted computers

Remove App Passwords

Using a new phone to receive 2-Step Verification codes

Change how you get verification codes

Passwords and codes used with 2-Step Verification

Common issues with 2-Step Verification

English

**Microsoft**

Office    Windows    Surface    Xbox    Deals    Support

## Microsoft account support

Manage account & billing    Community    Contact us

# Turning two-step verification on or off for your Microsoft account

Applies to  Microsoft account

Email this article

Print

Subscribe RSS Feeds

Every time you sign in to an untrusted device while you have two-step verification turned on, you'll get a security code in email or on your phone, making sure you're you. If you've turned off two-step verification, you'll get and resend security codes periodically, along with any time there's a risk to your account security. If you don't want to use email, a phone call, or text, you can use the Microsoft Authenticator app to help strengthen your account security and to sign-in without passwords. To turn two-step verification on or off:

1. Go to Security settings and sign in with your Microsoft account.

2. Under the Two-step verification section, choose Set up two-step verification to turn it on, or choose Turn off two-step verification to turn it off.

3. Follow the instructions.

Note: Before you turn on two-step verification, make sure you've associated at least three unique security contact email addresses or phone numbers with your account for backup purposes. If you lose your security info and you don't have a backup contact method available, you can permanently lose your account.

Learn more about two-step verification.

Find out more about the Microsoft Authenticator app

Last Updated: Jan 26, 2019

Did this solve your problem?

## What's new

Surface Pro 6

Surface Laptop 2

Surface Go

Xbox One X

Xbox One S

VR & mixed reality

Windows 10 apps

Office apps

## Microsoft Store

Account profile

Download Center

Microsoft Store support

Returns

Order tracking

Store locations

Buy online, pick up in store

## Education

Microsoft in education

Office for students

Office 365 for schools

Deals for students & parents

Microsoft Azure in education

## Enterprise

Azure

AppSource

Automotive

Government

Healthcare

Manufacturing

Financial services

## Developer

Microsoft Visual Studio

Windows Dev Center

Developer Network

TechNet

Microsoft developer program

Channel 9

Office Dev Center

## Company

Careers

About Microsoft

Company news

Privacy at Microsoft

Investors

Diversity and inclusion

Accessibility

Turning two-step verification on or off for your Microsoft account

Retail

Microsoft Garage

Security

☐ English (United States)

Contact us    Terms of use    Privacy and cookies    Trademarks    Safety & eco    © Microsoft 2019

# EXHIBIT E

/Profile/229104/ClarityToSee

"I would agree with the lawsuit. The two factor authentication process is time consuming and inconvenient for the users."

/Profile/225663/Pixelwahs

A suit is probably going too far, but I consciously realized that two -factor authentication would significantly increase the complexity of configuring my clean installs, and configuring new devices. So I've always avoided it for many of the reasons stated in the suit. I also dislike the nagging Apple does suggesting users enable two-factor authentication in new installs, or when there is a major system change in any of my Apple devices (of which there are many.)

/Profile/225073/CgWerks

I don't see how Apple is forcing it, but yeah, they sure are pushing it. I've tried 2FA in a few places, but besides the inconvenience, what happens if I don't have another device with me, or it gets lost/stolen, etc. right around the time Apple (or other entity) decides to make me re-authorize? Better security is a good thing, but I've found 2FA to be a royal pain. (And, the way most people use it isn't really much more secure anyway... more of a false trust. Or, I still get 2FA codes on my cell phone, from a previous user of my phone number... and that poor guy is probably screwed because he can't get back into said services, as I get the code. IMO, it's a mess.)

/Profile/222699/Seanismorris)

I don't think this warrants a lawsuit, but let me tell you a story.

1. I sent my iPhone 6s in for a battery replacement.

2. One day, I woke up and thought "I'm going to wipe my IPad clean"

- Background: I actually do this several times a year, usually after a significant OS upgrade. It also cleans of any games, junk, etc. that I don't

really need. I do this with the knowledge that I don't use backup, but my contacts,

calendar, shortcuts, passwords will sync back.

I think you can see my problem. My 6s has been gone 10 days at this point, and it took a

full 2 weeks to get my phone back (bad Apple).

Anyways, my wiped iPad boots up but I run into 2FA to set up the iPad. I know

everything I need to know (password to AppleID) but what I don't

have is my 6s. (Apple sends the code to the 6s and there's no alternative).

I also don't know my email password because it's saved in Keychain.

At this point, I also don't know what happened to my phone. It should be fixed (it was

just a freakin battery) and as of the previous day I'd already

reached the highest level of support. (There was no update on Apple's site that they even

received it). The nice support lady, wanted to call me

with an update... no phone. So, we agreed on email... now no email.

Fortunately, I remembered that I removed the SIM card. So, I went to my T-mobile store

and used a display phone to authenticate. Got my IPad

up and running and found my iPhone was found/done and being shipped back.

Moral of the story is 2FA is great, but I really want it tied to something other than

Idevice, like a YubiKey.

So, the lawsuit isn't entirely frivolous. I also didn't enable 2FA for my AppleID... I do

want 2FA to log into my devices, but that's not currently an

option. I don't care as much about my AppleID password it's really really complex... as

in come back in a few 100 million years (cracking it with

today's tech).

/Profile/197697/Knowitall

He is right, its very cumbersome, bordering on harassment.

I often have to run stairs up and down to be able to do what I could do with a simple

mouse click.

Its also very inconvenient when using another account.

I remember a very good Apple commercial which was completely right about PC's, but now sadly also a Mac reality:

https://youtu.be/8CwoluNRSSc (https://youtu.be/8CwoluNRSSc)

/Profile/175514/Mac_128

That said, it was a real problem for a friend in Europe who had his phone stolen, bought a new one, but wasn't able to activate it without 2FA. He had traveled with his Apple Watch but Apple didn't allow 2FA to go to it, because it needed the phone to set it up. So he was unable to download his contacts and info. At some point, people need to be able to deal with these kinds of issues without traveling with an electronic arsenal. That's where a simple dongle would be helpful.

/Profile/233547/ElCapitan

**A user should be able to completely reverse 2FA at will at any time.**

There needs to be a fallback that works when other trusted devices are not available.

/Profile/225073/CgWerks

Hmm, maybe in this particular situation, they should have thought of that, sure. But, I think the point is that there are lots of such situations, and most people don't think of every possibility until it comes back to bite them, often at the most inopportune time.  As was mentioned earlier, there is a tradeoff between security level and convenience. I'd love to see everyone at some base point of security that isn't too impractical, yet secure-enough. IMO, 2FA is more an attempt to patch poor, much less inconvenient, security practices with one that is quite impractical and prone to problems.  And, as I mentioned earlier... if these companies took security seriously in the first place, then I might see them trying to push things further. But, when there are lots of other weak spots, why try to inconvenience people? Maybe Apple would do better by not training users to be phished? Maybe by not using stupid 'security questions'? Maybe by trying to get them to use a good password manager?  I'm fine with having 2FA available, but I don't like how

Apple has been pushing it. Most users who aren't technical/comprehensive enough to use a password manager, probably shouldn't be using 2FA either. It is fraught with issues if you don't think them through. (ex: When I ran my web design company, I had instructions in case something happened to me, so someone could transition my clients properly. But, what if I had 2FA enabled for domains, web-services, etc? Would a typical less-technical person even have thought of such things? It raises the complexity considerably, when there are MUCH more simple things that could be done to increase security.)

/Profile/225073/CgWerks

Bingo! If there is some basis for a lawsuit, this is it. If you can't turn it back off when your situation changes, then that's bad. As mentioned above, you might have turned it on, then thought of a 'gotcha' situation where it would compromise your access or access by loved/trusted ones, should you get into a situation or something happen to you.  I think unlike slurpy's comment above, maybe the problem is that some people HAVE actually put some mental energy into the shortcomings.

/Profile/26403/Jdw

I hate all lawsuits. Human beings need to turn the other cheek even in the worst of times. With that said, I couldn't help but shake my head in sympathy when I spotted this article. I hate 2FA about as much as lawsuits. I try to keep that bothersome thing disabled wherever possible, on all my devices. I don't use iCloud Keychain because I prefer 1Password, but I believe it requires 2FA. It really needs to be up to me how much or how little security I think I need or want. I don't want to be forced to use 2FA in order to enable features. I lot of security nuts will laugh and mock at this kind of thinking, but everyone is different and should be allowed to choose the path that best suits them, without being told features will be disabled if 2FA isn't enabled.

/Profile/149911/Roundaboutnow

PS: What has thrown me off is where to enter the authentication code. I forget how exactly this happened to me, but I think it was when I was repurposing an old iPhone to be an iPod. Maybe while connecting it to my iCloud account? I think we're supposed to enter the code after the password in the password entry box, right? Anyway, it wasn't clear to me at the time, and I entered the code in the password field all by itself (without the password). Thinking I mis-typed, I ended up making too many attempts and had to reset my password. This was a bigger deal than I thought because of how many Apple devices and services I have that are connected to the account. I had to re-enter my new password in a bunch of places! I think it would be better if there was a third dedicated entry box for authentication code, after the User ID and Password entry boxes.

/Profile/225073/CgWerks

Yes, but Apple keeps pushing it in front of your face at OS updates or 'ToDos' in settings... and when you go into the UI in those cases, you have to hit the 'skip' or 'not now' instead of taking the path Apple wants you to take. So, yes, I guess you can opt-out and technically are opting in by following Apple's excessive prompting.

/Profile/214780/Larryjw

Yep. Try having your phone stolen.  2FA is a pain. Better to just choose a good password.  On the same idea, maybe worse is CAPTCHA. Sure, choose which of the blurry photos is a store front, or a car, or a street sign. No, I'm not a robot, but robots are better at this shit than I am. A better Turing test is which pictures do computers get right but people get wrong.

/Profile/237638/Chumley99

While I usually hate these ridiculous types of lawsuits, I would wholeheartedly agree that once you're stuck in this process it's infuriating! I think it's presumptuous to assume that a person would necessarily have/want a trusted device handy. Plus, maybe I'm just unlucky but it seems to take 2 attempts to get a code at least half the time.

Baron Von Chilidog (/Profile/237641/Baron%20von%20chilidog)

Two-factor authentication is out there for a reason, and it is up to the user to use it or not. Apple is a big pain in the *** with its "reminders", (not to mention the fact, for those of us that don't use an iPhone, that Apple then has another channel to annoy us with). I will use it if I need it. Now shut up.

/Profile/225073/CgWerks

Not if you don't have the 2nd factor with you.

/Profile/205950/Dix99

It is a right pain & they need to give me the option to turn it off.

/Profile/175514/Mac_128

I guess your trusted numbers are good unless your numbers been sim-spoofed.

Or your phone is lost or stolen.

A token can be lost or stolen, but then it's the backup to the device which could be lost or stolen. I don't think anyone is suggesting it be the exclusive way 2FA is handled. But carrying around an aresenal of extra devices everywhere a person goes, is not the solution either.

/Profile/233569/Discopants123

I'll just say that two factor identification is one thing when it's your account and your computer. And you know everything in memory.

And it's another thing for say my parents in their 80s to know all of this. They don't have smart phones (don't want them either and yes I've tried) so can't receive text messages via mobile.

I spent the last few evenings trying to get them up to speed. It was not easy. My dad somehow enter the password in the iPad he was setting up that I gave him doesn't even remember it and it locked and then the whole reset process took two damn days.

The thing that bugs me the most, is that after I have all of the devices there and I've entered all of the passwords and done everything, it seems like minutes later I can get

asked to enter all of that information again. That is extremely tedious when you're doing that for somebody else.

Seriously Apple if you just asked me for the password a minute ago don't bother me with that again for 15 more minutes at least please.

/Profile/60296/Digitol

There is something to this. I seem to remember APple forcing 2fa in order to use all of the icloud services. I think later they relaxed this rule. Make no mistake. There are far worse consequences than Apple losing lawsuits or even being sued over seemingly frivolous things. Think About how frustrated the customer must be to actually carry out this lawsuit. You know it and I know it. Apple's security measures are a major pain in the ass.

Faaaaar outreaches it's usefulness. If Apple keeps this up, it will continue to see its userbase shrink/sales fall. iPhone X series phones, homepod, FLOP FLOP.

/Profile/237644/Orangesherbet

Wow, I got pissed with Apple's approach to password and identity management helping multiple family members with their Apple accounts, but I never thought wow I should file a lawsuit. I would probably sue my family members for not using Android, where Google has a way more convenient, smarter, platform-independent authentication system.

/Profile/204320/Baconstang

A couple of years ago I bought a new iMac and set it up using my old iMac's Time Machine. In the process, it gave me a 2nd Apple ID with 2FA, without any input from me.

WTF?

/Profile/237649/Hotsauce412

I work for Apple in the mac+ department. I handle every product that uses an Apple id. Everyday I handle on average 10 - 15 calls about 2 factor. The process is far from perfect, not fully explained to customers and is hated by most employees (including myself)

because we take the brunt of mad customers frustrated with the process. Beyond the pain of the time it takes you have a bigger issues if you cant get to your trusted device.  You have to enter account recovery which can take at minimum 2 days to up to a month. During this time the customer has zero access to the account. I put on average 6 people into recovery a day, everyone one of them being mad that it takes as long as it does. Apple has insane resources available, there is no reason to take peoples phones, tablets, computers away for days simply to change a password. This lawsuit has merit as a whole problem, but I disagree with the concept of wasting 30 seconds to sign in.

/Profile/63965/OutdoorAppDeveloper

There is a risk that if the device that receives the two-factor code is not online for some reason (not charged, service unavailable, bill not paid, etc.)  you won't be able to log into another device without some serious hoop jumping. Two factor authentication as implemented is far too complicated for my 80 year old mother to use. I would prefer biometrics plus a code as the second factor.

/Profile/41176/Rcfa

The problem isn't the occasional 22s, it is that in unreliable networks, behind odd firewall, or whatever, often it simply doesn't work: the prompt with the "second factor" doesn't arrive.

Also there are serious issues in case of a hardware failure: you may end up stranded, without a second device unable to access key data when you urgently need it.

I luckily happen to have multiple iPhones plus an iPad and a couple of Macs, so the hardware failure scenario is less of an issue, but had I only a phone plus a Mac, I'd have been stranded on many occasions.

/Profile/29883/Anantksundaram

And, there is no valid reason for Apple to disallow someone -- even if you think they are stupid -- from turning it off. For example, all manner of basic Apple security features can

be turned off (e.g., passcode, TouchID, FaceID, if you don't want to use ApplePay) after you try it out and see if it works for you.

/Profile/43790/Zoetmb

And here's what I don't get: the only time I see a 2FA message is when I go into iCloud. But maybe I didn't turn on 2-factor authentication. One thing I do agree with: the user should be able to shut it off.

/Profile/225073/CgWerks

I've turned off 2FA on several other major services, and can turn it on/off as needed. Either every one else doesn't know what they are doing, or Apple is trying to hook people in with no way out. I'm pretty sure it's the latter.

Exactly. This is why it should be optional.... WITHOUT Apple trying every trick to 'opt-in' people.

And, you're absolutely right that the current authentication system is a mess. I get the impression that there are a dozen independent 'services' on the device that all get to pop authentication dialogs at will. Heaven help you if one of those 'services' misses that you changed email address and/or gets out of sync with the others. And, the worst part is that by doing it this way, Apple is just training their users for every phishing attempt they will run across.

In reading articles on other sites, it seems the primary complaint isn't about the time, but about not being able to turn it back off after like 15 days.

While I'm not sure how that will prove damages or whatever, THAT is a completely legitimate thing to complain about and try to reverse. If it takes a lawsuit to pull that off, I say more power to these people!

/Profile/121492/Spacekid

The problem is, it's not very clear how you can configure it so you're able to use 2FA when your primary device is not available. This is not a frivolous lawsuit. Hopefully it forces Apple to improve 2FA.