1  TIFFANY CHEUNG (CA SBN 211497)
   TCheung@mofo.com
2  LAUREN L. ERKER (CA SBN 291019)
   LErker@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California  94105-2482
   Telephone:   415.268.7000
5  Facsimile:   415.268.7522

6  ERIN P. LUPFER (CA SBN 317994)
   ELupfer@mofo.com
7  MORRISON & FOERSTER LLP
   12531 High Bluff Drive
8  San Diego, California  92130-2040
   Telephone:   858.720.5100
9  Facsimile:   858.720.5125

10 Attorneys for Defendant
   APPLE INC.

11

12                UNITED STATES DISTRICT COURT

13               NORTHERN DISTRICT OF CALIFORNIA

14                     SAN JOSE DIVISION

15

| | |
|---|---|
| 16 JAY BRODSKY, BRIAN TRACEY, ALEX BISHOP, BRENDAN SCHWARTZ, WILLIAM RICHARDSON, and JOHN KYSLOWSKY, each on behalf of himself and all others similarly situated, | Case No. 5:19-CV-00712-LHK **DEFENDANT APPLE INC.'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT** |
| Plaintiffs, | Date:     March 12, 2020 Time:    1:30 p.m. Ctrm:    8 Judge:    Honorable Lucy H. Koh |
| v. | |
| APPLE INC., a California corporation, | |
| Defendant. | Second Am. Complaint Filed:  Sept.  26, 2019 |

23

24

25

26

27

28

1
2

**NOTICE OF MOTION AND MOTION**
**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

3
4
5
6
7
8

**PLEASE TAKE NOTICE THAT** on March 12, 2020, at 1:30 p.m., or as soon thereafter as the matter may be heard in the U.S. District Court, Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, California, in Courtroom 8 before the Honorable Lucy H. Koh, Defendant Apple Inc. ("Apple") will move the Court to dismiss the claims in the Second Amended Class Action Complaint ("SAC") with prejudice for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

9
10
11

Apple seeks to dismiss Plaintiffs' claims based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and all pleadings and papers on file in this action, and on such other written and oral argument as may be presented to the Court.

12
13

Dated:          October 22, 2019          TIFFANY CHEUNG
                                           MORRISON & FOERSTER LLP

14
15
16
17

By:   /s/ Tiffany Cheung
          TIFFANY CHEUNG

Attorneys for Defendant
APPLE INC.

18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO PLAINTIFFS AND THEIR ATTORNEYS
OF RECORD ................................................................................................................. i

TABLE OF AUTHORITIES .................................................................................................. iii

STATEMENT OF ISSUES TO BE DECIDED ..................................................................... v

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ vi

I.      INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND ........................................................................................................ 2

        A.      Two-Factor Authentication. ........................................................................... 2

        B.      Plaintiffs Consented to 2FA. .......................................................................... 3

        C.      The Second Amended Complaint. .................................................................. 4

        D.      Procedural History. ........................................................................................ 6

III.    LEGAL STANDARD ................................................................................................ 6

IV.     ARGUMENT ............................................................................................................. 7

        A.      Plaintiff Brodsky and the Proposed Class's CIPA, CFAA, and CCCL
                Claims Are Time-Barred, As Is Plaintiff Tracey's CIPA Claim. ................... 8

        B.      Plaintiffs' New Allegations Are Insufficient to State a Claim for Trespass
                to Chattels. ...................................................................................................... 9

                1.      Plaintiffs Authorized 2FA for Their Apple ID. ................................ 10

                2.      Plaintiffs' Trespass to Chattels Claim Also Fails Because They
                        Cannot Allege That 2FA Damaged Their Property. ........................ 12

                        a.      The Alleged Temporary Delay 2FA Causes When Plaintiffs
                                Log In to Their Apple IDs Is Insufficient to Establish Harm. ...... 13

                        b.      Neither Apple nor 2FA Caused Plaintiffs the Harm They
                                Allegedly Suffered From Their Temporary Inability to Log
                                In With 2FA. ...................................................................... 13

        C.      Plaintiffs Again Fail to State a Wiretap Claim Under CIPA. ........................ 15

        D.      The Court Should Dismiss Plaintiffs' CFAA Claim With Prejudice ............. 17

                1.      Plaintiffs Fail to Allege Any "Access" By Apple That Was
                        "Without Authorization" or "Exceeded Authorization." ................... 18

                2.      Plaintiffs Again Fail to Allege the Required $5,000 in Damages ..... 20

        E.      Plaintiffs' CCCL Claim Fails .......................................................................... 22

                1.      Plaintiffs Permitted Any Alleged Access by Apple Through 2FA. ...... 22

                2.      Plaintiffs Failed to Cure Their Deficient Allegations Regarding the
                        Other Required Elements of Their CCCL Claim. .............................. 23

        F.      The Court Should Dismiss Plaintiffs' Unjust Enrichment Claim With
                Prejudice ......................................................................................................... 23

V.      CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Johnson*,
  355 F.3d 1179 (9th Cir. 2004)...............................................................................7

*Andrews v. Sirius XM Radio Inc.*,
  932 F.3d 1253 (9th Cir. 2019) ............................................................................21

*In re Apple & ATTM Antitrust Litig.*,
  No. C 07–05152 JW, 2010 WL 3521965 (N.D. Cal. Jul. 8, 2010).........................12, 15, 20, 22

*Aryeh v. Canon Bus. Solutions*,
  55 Cal. 4th 1185 (2013) .......................................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................7

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ..........................................................................24, 25

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................7, 14

*Coghlan v. Wellcraft Marine Corp.*,
  240 F.3d 449 (5th Cir. 2011) .........................................................................24 n.7

*CompuServe, Inc. v. Cyber Promotions, Inc.*,
  962 F. Supp. 1015 (S.D. Ohio 1997) ...............................................................10 n.5

*Conley v. Gibson*,
  355 U.S. 41 (1957) ..............................................................................................7

*DHI Grp., Inc. v. Kent*,
  No. CV H-16-1670, 2017 WL 8794877 (S.D. Tex. Apr. 21, 2017) ...................10 n.5

*Engle v. Unified Life Ins. Co., Inc.*,
  No. 14-CV-1908-MMA (JLB), 2014 WL 12508347 (S.D. Cal. Oct. 27, 2014) ....................13

*Facebook, Inc. v. Power Ventures, Inc.*,
  844 F.3d 1058 (9th Cir. 2016) .......................................................................18, 19, 23

*In re Facebook Internet Tracking Litig.*,
  263 F. Supp. 3d 836 (N.D. Cal. 2017) .............................................................10, 16

*Fayer v. Vaughn*,
  649 F.3d 1061 (9th Cir. 2011)..........................................................................7, 7 n.3

*Foman v Davis*,
    371 U.S. 178 (1962) ................................................................................................7

*Fowler v. Wells Fargo Bank, N.A.*,
    No. 17-cv-02092-HSG, 2017 WL 3977385 (N.D. Cal. Sept. 11, 2017) ................23

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ..............................................................................11

*Gonzales v. Uber Techs., Inc.*,
    305 F. Supp. 3d 1078 (N.D. Cal. 2018) ................................................................23

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    273 F. Supp. 3d 1099 (N.D. Cal. 2017) ..........................................................18, 19

*Huluwazu v. Snyder*,
    No. 17-CV-03386-LHK, 2017 WL 5991865 (N.D. Cal. Dec. 4, 2017) ..................25

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
    12 N.Y.3d 132 (2009) ....................................................................................24 n.7

*Intel Corp. v. Hamidi*,
    30 Cal. 4th 1342 (2003) ...................................................................................12, 13

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................18

*Interbank Investments, LLC. v. Eagle River Water & Sanitation Distr.*,
    77 P.3d 814 (Colo. Ct. App. 2003) ................................................................24 n.7

*Klein v. Chevron U.S.A., Inc.*,
    202 Cal. App. 4th 1342 (2012) ..............................................................................24

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ................................................................................17

*Lackner v. Glosser*,
    892 A.2d 21 (Penn. Sup. Ct. 2006) ................................................................24 n.7

*Leadsinger, Inc. v. BMG Music Pub.*,
    512 F.3d 522 (9th Cir. 2008) ..................................................................................7

*Low v. LinkedIn Corp.*,
    No. 11-CV-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ...............21

*Mandani v. Volkswagen Grp. of Am., Inc.*,
    No. 17-CV-07287-HSG, 2019 WL 652867 (N.D. Cal. Feb. 15, 2019) .................24

*Mount v. PulsePoint, Inc.*,
    No. 13 CIV. 6592 (NRB), 2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016) ............10

*Multiven, Inc. v. Cisco Sys., Inc.*,
  725 F. Supp. 2d 887 (N.D. Cal. 2010) ...................................................22

*Oracle USA, Inc. v. Rimini St., Inc.*,
  879 F.3d 948 (9th Cir. 2018) ..............................................................23

*Quigley v. Yelp, Inc.*,
  No. 17-CV-03771-RS, 2018 WL 7204066 (N.D. Cal. Jan. 22, 2018)...................17

*Rosemont Taxicab Co., Inc. v. Philadelphia Parking Auth.*,
  327 F. Supp. 3d 803 (E.D. Pa. 2018) ..............................................10 n.5

*Thrifty-Tel, Inc. v. Bezenek*,
  46 Cal. App. 4th 1559 (1996) ...........................................................14

*Ticketmaster L.L.C. v. Prestige Entm't, Inc.*,
  306 F. Supp. 3d 1164 (C.D. Cal. 2018) .................................................19

*US Fax Law Ctr., Inc. v. iHire, Inc.*,
  374 F. Supp. 2d 924 (D. Colo. 2005) ..............................................10 n.5

*US v. Nosal (Nosal I)*,
  676 F.3d 854 (9th Cir. 2012) .......................................................17, 21

*Werdebaugh v. Blue Diamond Growers*,
  No. 12-CV-02724-LHK, 2013 WL 5487236 (N.D. Cal. Oct. 2, 2013) ...............17 n.3

*Wuliger v. Manufacturers Life Ins. Co. (USA)*,
  567 F.3d 787 (6th Cir. 2009) .......................................................24 n.7

*In re Zynga Privacy Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ..........................................................16

**Statutes**

18 U.S.C. §§ 1030, *et seq.*..........................................................16, 18, 19, 20, 21

Cal. Penal Code §§ 630, *et seq.*.......................................................16

Cal. Penal Code § 502..................................................................22

1

**STATEMENT OF ISSUES TO BE DECIDED**

2

This motion raises the following issues:

3

1.      Should the Court dismiss Plaintiff Brodsky and the proposed class's claims under

4

the California Invasion of Privacy Act ("CIPA"), Computer Fraud and Abuse Act ("CFAA"), and

5

California Computer Crime Law ("CCCL"), and Plaintiff Tracey's CIPA claim as time-barred

6

under their respective statutes of limitation?

7

2.      Should the Court dismiss Plaintiffs' trespass to chattels claim because Plaintiffs

8

authorized Apple to enable two-factor authentication ("2FA") and Plaintiffs do not allege any

9

damage caused by Apple?

10

3.      Should the Court dismiss Plaintiffs' CIPA wiretapping claim because Apple could

11

not "intercept" any communications to which it was a party, Plaintiffs fail to identify the

12

"contents" of any "communications" intercepted by Apple while "in transit," and Plaintiffs

13

authorized 2FA on their devices?

14

4.      Should the Court dismiss Plaintiffs' CFAA claim because Plaintiffs authorized any

15

access to their devices to enable 2FA, Plaintiffs did not revoke that *access*, and Plaintiffs have not

16

plausibly alleged the required statutory loss?

17

5.      Should the Court dismiss Plaintiffs' CCCL claim because Plaintiffs gave Apple

18

permission to enable 2FA and have only asserted conclusory allegations regarding the remaining

19

required elements?

20

6.      Should the Court dismiss Plaintiffs' unjust enrichment claim because it is not a

21

separate cause of action and Plaintiff Brodsky and the proposed class's claims fall outside the

22

statute of limitations?

23

7.      Should the Court dismiss all of Plaintiffs' claims with prejudice for failure to cure

24

the deficiencies identified in the Court's order dismissing the First Amended Complaint ("FAC")

25

and Apple's motion to dismiss the FAC?  (*See* ECF Nos. 32, 40 at 20:24-27.)

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

In their third attempt, Plaintiffs again fail to state any claim based on Apple's two-factor authentication process, which offers enhanced protection to users against unauthorized access to users' Apple ID accounts.  Plaintiffs' misguided attempts to distort privacy laws to challenge security measures designed to *protect* privacy should not be permitted.

In dismissing Plaintiffs' FAC in its entirety for failure to state a claim, the Court identified a fatal flaw that defeated all of Plaintiffs' claims: "Plaintiffs d[id] not allege facts to indicate that Plaintiffs failed to authorize the enablement of 2FA."  (ECF No. 40 ("Order") at 6:11-12.) Plaintiffs fail to cure this core deficiency in the SAC.  Only two plaintiffs even recall how they authorized 2FA—through a software update.  But neither alleges that he received (or failed to receive) any information about 2FA during the software update that would undermine the Court's finding of consent to 2FA.

The only allegation in the SAC regarding the scope of Plaintiffs' consent to 2FA is Plaintiffs' acknowledgement that Apple provides a two-week period to disable 2FA, which expired long ago for Plaintiffs.  They cannot, at this late date, purport to revoke their consent to one particular feature of a software upgrade to which they consented.  Moreover, by purporting to revoke consent to only one method of logging in to Apple ID (2FA), while conceding that they are authorizing other login methods, Plaintiffs do not revoke Apple's *access* to their devices or Apple ID account-related login activity.  Plaintiffs' subjective desire to pick and choose the *manner* of Apple's access (and to turn on and off a feature of a software upgrade at any time) does not create a cognizable trespass, privacy, or hacking claim.

Plaintiffs' allegations of harm also fall short again.  The Court already concluded that the additional time Plaintiffs allege 2FA requires for logging in is not actionable.  Plaintiffs focus in the SAC on the alleged "lockout" from their Apple devices and "100% blocking of bandwidth and network access" and "100% denial of access to Apple Services and any Third-Party Apps." But this purported harm is contradicted by Plaintiffs' allegations that 2FA does not affect a user's ability to unlock or log in to their Apple *device.*  Moreover, the alleged harm is due to Plaintiffs'

own independent actions—*not* any action by Apple—that caused the alleged loss of access to the 2FA verification code.  Additionally, Plaintiffs' attempt to quantify the cost of the claimed lack of access is insufficient to demonstrate that Apple has caused Plaintiffs $5,000 in damages, as required for their hacking claim.

Finally, once again, Plaintiff Brodsky and the putative class's statutory claims are time-barred, Plaintiff Tracey's CIPA claim is time-barred, and Plaintiffs fail to show that their unjust enrichment claim should be construed as one for quasi-contract.  The SAC offers no allegations that alter the Court's previous conclusions requiring dismissal of these claims.

The Court warned Plaintiffs that "failure to cure the deficiencies identified [in the order] or in Apple's motion to dismiss will result in dismissal with prejudice."  (*Id.* at 20:24-27.) Plaintiffs did not heed the Court's warning.  Their last-ditch effort, such as their alleged "senior persons" subclass seemingly based on nothing more than the blanket assertion that seniors "are challenged with [the] use of technology" (ECF No. 43 ("SAC") ¶ 84), does not amount to a claim.[1]  The Court should therefore dismiss the SAC in its entirety without leave to amend.

## II.    BACKGROUND

### A.    Two-Factor Authentication.

2FA is an additional layer of security for logging into one's Apple ID that is designed to ensure that only the authorized owner can access the iCloud account and other information associated with that particular Apple ID.  (*See* SAC ¶ 35 (discussing "2FA . . . for an Apple ID"), ¶ 61.)

2FA is tied to a user's Apple ID, *not* a specific Apple device.  (*See id.* ¶ 35 ("2FA enabled for an Apple ID"), ¶ 36 ("Protect your Apple ID"), ¶ 37 (enabled 2FA for Apple ID), ¶ 38 ("2FA was turned on for Plaintiff Tracey's Apple ID"), ¶ 47 ("you need a trusted device or trusted phone number to unlock your Apple ID"), ¶ 61 ("enabling two-factor authentication for your Apple ID").)  As such, it does not affect a user's ability to unlock or log in to their Apple *device*.

---

[1] Indeed, by Plaintiffs' own logic, 2FA and the enhanced protection it provides may be even more important for such individuals because 2FA could better protect individuals from bad actors attempting to improperly access their sensitive and personal information.

1   (*See id.* ¶ 40 (showing image of an *unlocked* Apple device asking user to enter the verification

2   code for 2FA login for their Apple ID), ¶ 41 (showing image of an *unlocked* Apple device

3   allegedly "requesting six-digit verification code"); *see also id.* ¶ 61 (email explaining that 2FA

4   "significantly improves the security of your *Apple ID*") (emphasis added).)

5        Even without 2FA enabled, an Apple ID requires a password to log in and access data

6   associated with that Apple ID and stored by Apple on iCloud.  (*See id.* ¶ 42 ("With 2FA enabled,

7   password alone is no longer enough to access your account"), ¶ 61 (2FA is an "additional layer of

8   security" on top of Apple ID password); *see also id.* ¶ 36 ("[p]rotect your Apple ID and iCloud

9   data").)  Once a user enables 2FA, and fails to invoke any opportunity to disable it, 2FA becomes

10  part of a permanent software upgrade to the security of the user's Apple ID account, and the

11  security questions linked to the older security setting (password only) expire.  (*Id.* ¶ 61.)

12                **B.        Plaintiffs Consented to 2FA.**

13       Plaintiffs Brodsky and Tracey allege that they enabled 2FA through a software update in

14  September 2015 and September 2017, respectively.  (*Id.* ¶¶ 37-38.)  As in the FAC, Plaintiff

15  Brodsky has "offered no information about the 2015 software update that allegedly enabled 2FA

16  on his phone, nor about whether Plaintiff Brodsky read or reviewed the message that

17  accompanied the update and whether the message disclosed that the update would enable 2FA."

18  (Order at 6:27-7:3.)  Nor has Plaintiff Tracey.

19       The only information in the SAC about software updates and 2FA comes from a comment

20  from an alleged Apple device user attached to the SAC.[2]  (SAC Ex. E at 57.)  The alleged user

21  explains that "when you go into the [User Interface]" for software updates, "you have to hit the

22  'skip' or 'not now' instead of taking the path Apple wants you to take."  (*Id.*)  Plaintiffs' own

23  allegations thus reveal that users receive notice and can opt out of 2FA during a software update.

24  (*See id.*)  Accordingly, by not clicking on "skip" or "not now," Plaintiffs Brodsky and Tracey

25  opted in and authorized 2FA when they decided to install the relevant software update.

26

27       [2] Plaintiffs do not identify the source of the comments in Exhibit E, much less who made
    them or whether they are complete.  Even accepting Plaintiffs' allegation that they are "comments
28  from Apple users on 2FA" (SAC ¶ 69), the comments contradict Plaintiffs' allegations.

1   Plaintiffs Bishop, Schwartz, Richardson, and Kyslowsky claim that they did not turn on

2   2FA for their Apple ID in device settings, but they "do not remember when" or "how" they

3   enabled 2FA.  (SAC ¶¶ 39, 48-49.)  Nonetheless, Plaintiffs allege that there are only two other

4   methods for enabling 2FA for an Apple ID: (1) through voluntarily installing a software update or

5   (2) creating a new Apple ID.  (*See id.* ¶ 35.)  "None of those means to enable 2FA permits Apple

6   to enable 2FA unilaterally and without Plaintiffs' authorization."  (Order at 6:14-15.)

7   Plaintiffs also allege that, after a user enables 2FA, the owner of the Apple ID in some

8   instances receives the following email:

9   Thank you for enabling two-factor authentication for your Apple ID (a · · · · ·@gmail.com).

10  Two-factor authentication is an additional layer of security designed to ensure that you're
    the only person who can access your account, even if someone knows your password. This

11  significantly improves the security of your Apple ID and helps protect the photos,
    documents, and other data you store with Apple. For more information read Two-Factor

12  Authentication for Apple ID.

13  If you didn't enable two-factor authentication and believe someone else has access to your

14  account, you can return to your previous security settings. This link and your Apple ID security
    questions will expire on October 15, 2018.

15

16  (SAC ¶ 61 (emphasis added).)  Just as they do not remember how or when they enabled 2FA,

17  Plaintiffs "do not remember" receiving the above email that provides an opportunity to return to

18  "previous security settings."  (*Id.* ¶¶ 61-62.)

19  Plaintiffs allege that the email discloses that the time period to disable 2FA is limited to

20  two weeks after the original enabling of 2FA.  (*Id.* ¶ 61; *see id.* ¶ 3 (a user may disable 2FA

21  within two weeks).)  Apart from the email, Plaintiffs offer no other allegations regarding the

22  scope of their consent to 2FA.

23  **C.      The Second Amended Complaint.**

24  Plaintiffs acknowledge Apple's commitment to protecting its customers' privacy (*id.* ¶

25  16), yet challenge the additional security that 2FA offers to protect user privacy.  They now wish

26  to disable 2FA because they are dissatisfied with the two to five additional minutes 2FA

27  purportedly requires to log in to their Apple IDs and the alleged temporary "lock outs" from their

28  Apple devices when they have no internet connection or somehow lost access to their trusted

devices.  (*See, e.g.*, *id.* ¶ 43.)  Accordingly, they unilaterally announce in the SAC that they "hereby revoke any authorization Apple may have to continue to ***operate*** 2FA."  (*Id.* ¶ 65 (emphasis added).)

The SAC adds two new Plaintiffs, Richardson and Kyslowsky (*id.* ¶ 8), but Plaintiffs' core allegations of the alleged "harm" caused by 2FA have not changed.  Plaintiffs generally allege that when they do not have access to the verification code required to log in with 2FA because they lack internet access or are unable to access their trusted devices, they experience "100% blocking of bandwidth and network access" and "100% denial of access to Apple Services and any Third-Party Apps."  (*Id.* ¶¶ 44-46.)  Plaintiffs Bishop and Schwartz again allege that they temporarily lost access to their Apple devices and/or "Apple Services" after they could not access their trusted devices (due to events wholly outside of Apple's control).  (*See id.* ¶¶ 48-49.)  Plaintiff Richardson alleges that he was locked out of his devices "when he could not recollect offhand his password."  (*Id.* ¶ 50.)

In an effort to quantify their alleged harm from 2FA, Plaintiffs add numerous new allegations regarding the costs of Plaintiffs' various Apple devices, as well as the Apple services and third-party apps they have purchased or to which they subscribe.  (*Id.* ¶¶ 18-33, Exs. A-C.) Without explanation, Plaintiffs also allege that "[t]here is a cost and harm associated with each Plaintiff's use of Third-Party Apps when interfered with by Apple even when they are installed for free."  (*Id.* ¶ 125.)

Plaintiffs newly allege that companies like Google, Microsoft, and Amazon allow 2FA to be disabled.  (*Id.* ¶ 63, Ex. D.)  Even if other, unrelated companies have had different security and access policies at some undefined time for other types of accounts not at issue here, this allegation does not support any claim that providing more stringent security for access to Apple Pay, the App Store, Apple Music, iMessage, iTunes, iCloud, and FaceTime would violate any law.  (*See id.* ¶ 20.)  Nor do they speak to what information Apple presents to users when they first enable 2FA or how 2FA affects the overall functioning of an Apple ID, as compared to the two-step verification processes allegedly used by Google, Microsoft, and Amazon for certain accounts.

Plaintiffs again purport to represent a putative class of "[a]ll persons or entities in the

United States who own or owned an Apple Watch, iPhone, iPad, MacBook, or iMac or use Apple Services that have enabled two-factor authentication ('2FA'), subsequently want to disable 2FA, and are not allowed to disable 2FA." (*Id.* ¶ 71.)  Plaintiffs also allege a new "senior" person subclass.  (*Id.* ¶¶ 72-74.)  Plaintiffs do not identify any legal basis for this new subclass, but simply contend, without any support, that senior persons "are challenged with use of technology." (*Id.* ¶ 84.)

As before, Plaintiffs allege in conclusory terms that their decision to enable 2FA for Apple ID gives rise to five causes of action: (1) trespass to chattels; (2) violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code § 630, *et seq*.; (3) violation of the California Computer Crime Law ("CCCL"), California Penal Code § 502; (4) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030, *et seq*.; and (5) unjust enrichment.  (*Id.* ¶¶ 94-133.)  As with their previously dismissed FAC, all of these claims rely on the theory that Apple had no authorization to enable 2FA for Plaintiffs' Apple IDs and that Plaintiffs suffered damages caused by the increased security measure.  Despite the opportunity to amend, Plaintiffs' own allegations once again show that their claims are meritless.

### D.   Procedural History.

Plaintiff Brodsky filed the original class action complaint on February 8, 2019.  (ECF No. 1.)  Over a month later, Plaintiff Brodsky tried again and filed the FAC, adding Plaintiffs Tracey, Bishop, and Schwartz, and new allegations related to those plaintiffs.  (ECF No. 13.)

On May 1, 2019, Apple moved to dismiss the FAC.  (ECF No. 32.)  The Court granted Apple's Motion and dismissed the FAC in its entirety.  (Order at 20:22-23.)  The Court noted that it was "exceedingly skeptical" of some of Plaintiffs' theories and warned Plaintiffs that "failure to cure the deficiencies identified [in the order] or in Apple's motion to dismiss will result in dismissal with prejudice."  (*Id.* at 12:12, 20:25-27.)

On September 26, 2019, Plaintiffs filed the SAC.  (ECF No. 43.)  Apple now moves to dismiss all of the claims asserted in the SAC by all Plaintiffs with prejudice.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to plead each claim with

1    sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds

2    upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v.*

3    *Gibson*, 355 U.S. 41, 47 (1957)).  The Court should dismiss a claim under Federal Rule of Civil

4    Procedure 12(b)(6) when a plaintiff fails to plead enough facts to state a claim for relief that is

5    "plausible on its face." *Id.* at 570.  To survive dismissal, the plaintiff must plead sufficient factual

6    content to allow the Court to "draw the reasonable inference that the defendant is liable for the

7    misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court accepts factual

8    allegations as true at this stage but cannot "assume the truth of legal conclusions merely because

9    they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir.

10   2011) (*per curiam*) (citation omitted).  "[C]onclusory allegations of law and unwarranted

11   inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179,

12   1183 (9th Cir. 2004).  Judicial review is a "context-specific task that requires the reviewing court

13   to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

14        The Court may dismiss a complaint without leave to amend based on "repeated failure to

15   cure deficiencies by amendments previously allowed," and where amendment would be futile.

16   *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v Davis*,

17   371 U.S. 178, 182 (1962)).

18        **IV.    ARGUMENT**

19        The Court should dismiss Plaintiffs' claims in the SAC with prejudice because they still

20   suffer from the same, core deficiencies: Plaintiffs authorized Apple to enable 2FA for their

21   Apple ID and did not experience damage caused by Apple.[3]  Plaintiffs purport to revoke their

22   authorization for 2FA, but they fail to allege that they did not permanently enable 2FA or that

23

---

24        [3] Plaintiffs now allege that "[a]ll terms and use agreements for all of the Apple Products
     and Services include a 'Controlling Law' provision that effectively chooses the laws of the State
25   of California" (SAC ¶ 15), and on that basis assert that California law governs Plaintiffs' claims
     in this case.  Given Plaintiffs' allegation at the pleading stage, Apple analyzes Plaintiffs' claims
26   under California law for purposes of its motion to dismiss only.  *See Fayer*, 649 F.3d at 1064.
     Apple reserves the right to challenge the application of California law to Plaintiffs' and the
27   putative class's claims once the factual record, if any, is established in this case.  *See Werdebaugh
     v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 WL 5487236, at *16 n.9 (N.D. Cal.
28   Oct. 2, 2013) (Koh, J.) (noting that the choice-of-law analysis is fact intensive and should occur
     during the class certification, not the pleadings, stage).

they revoked Apple's authorization to access Plaintiffs' devices or login activities through their use of Apple IDs.  Additionally, the Court should again dismiss Plaintiffs' claims because most of Plaintiff Brodsky and the putative class's claims and Plaintiff Tracey's CIPA claim are time-barred, and all Plaintiffs still fail to plausibly allege other necessary elements of each of their claims.

### A.   Plaintiff Brodsky and the Proposed Class's CIPA, CFAA, and CCCL Claims Are Time-Barred, As Is Plaintiff Tracey's CIPA Claim.

The Court dismissed Plaintiff Brodsky and the putative class's statutory claims in the FAC because they were brought too late.  (Order at 17:15-19:20.)  As the Court explained, "because Plaintiff Brodsky and the putative class enabled 2FA in 2015, the statute of limitations ran for their CIPA claims in 2016, their CFAA claims in 2017, and their CCCL claims in 2018," all before Plaintiffs filed their Complaint in February 2019.  (*Id.* at 18:4-6.)  The SAC again alleges that Plaintiff Brodsky and the putative class enabled 2FA in 2015.  (SAC ¶¶ 37, 70.)  Thus, their claims remain time-barred by the applicable statutes of limitations.  (*See* Order at 17:26-18:4 (CIPA statute of limitations is one year; CFAA statute of limitations is two years; and CCL statute of limitations is three years).)

The SAC reveals an additional timing deficiency.  Plaintiffs now allege that Plaintiff Tracey enabled 2FA through a software update in September 2017.[4]  (SAC ¶ 38.)  Thus, the statute of limitations for Plaintiff Tracey's CIPA claim ran in September 2018, before Plaintiffs filed this action.  (*See* Order at 17:26-27.)

The Court rejected Plaintiffs' previous attempt to save Plaintiff Brodsky and the putative class's untimely claims under the continuous accrual or continuing violation doctrines or the delayed discovery rule.  (*Id.* at 18:11-19:20.)  Plaintiffs have not alleged any new facts demonstrating that Plaintiff Brodsky and the putative class's statutory claims accrued at a later date and are therefore not time-barred.  Likewise, neither of the "continuing-wrong" accrual

---

[4] Notwithstanding the opportunity to amend their Complaint, the SAC is silent as to when the remaining named Plaintiffs first enabled 2FA.  These Plaintiffs' claims may likewise be time-barred for the same reasons.

1    principles or the discovery rule saves Plaintiff Tracey's CIPA claim.

2        *First*, the continuous accrual doctrine still has no force because "Plaintiffs have not

3    alleged any right to periodic payments, or challenged Apple's assessment of a periodic

4    obligation[]."  (Order at 18:22-23.)  Instead, the crux of Plaintiffs' SAC remains that Apple did

5    not obtain Plaintiffs' consent to enable 2FA and does not provide Plaintiffs with an option to

6    disable 2FA after an initial two-week period.  (*See* SAC ¶¶ 1-4.)

7        *Second*, the continuing violation doctrine again does not save the time-barred claims.  The

8    Court held that the doctrine applies where there is "'a series of discrete, independently actionable

9    alleged wrongs'" (Order at 19:2 (quoting *Aryeh v. Canon Bus. Solutions*, 55 Cal. 4th 1185, 1198

10   (2013)), and that "'wrongful course of conduct [becomes] *apparent* only through the

11   accumulation of a series of harms.'"  (*Id.* at 19:8-9 (quoting *Aryeh*, 55 Cal. 4th at 1198).)  The

12   Court rejected Plaintiffs' claim that they suffer an ongoing injury from 2FA because users could

13   have disabled 2FA within 14 days of enabling the enhanced security measure.  (Order at 19:6-7.)

14   It also concluded that, in any event, "[a]ny user allegedly injured by 2FA would doubtless be

15   aware of that injury on the user's first attempt to log in to his Apple ID via 2FA."  (*Id.* at 19:9-

16   11.)  Plaintiffs do not (and cannot) contest this conclusion, thus conceding that the continuing

17   violation doctrine fails to save Plaintiff Brodsky and the putative class's statutory claims, as well

18   as Plaintiff Tracey's CIPA claim.

19       *Third*, the delayed discovery rule is again inapplicable because "Plaintiffs' [S]AC includes

20   no allegations of delayed discovery."  (*Id.* at 19:17.)  As the Court explained, "any user allegedly

21   injured by 2FA would be aware of that injury on the user's first attempt to log in via 2FA."  (*Id.* at

22   19:19-20.)  Again, Plaintiffs do not dispute this.

23       Plaintiff Brodsky and the putative class's CIPA, CFAA, and CCCL claims are time-

24   barred, as is Plaintiff Tracey's CIPA claim.  These claims should therefore be dismissed with

25   prejudice.  (*See* Order at 20:24-25.)

26       **B.    Plaintiffs' New Allegations Are Insufficient to State a Claim for Trespass to Chattels.**

27

28       The Court dismissed Plaintiffs' trespass to chattels claim for failure to allege that Apple

enabled 2FA without Plaintiffs' authorization or caused any harm by the alleged trespass.  (Order at 6:3-8:23.)  The Court explained that Plaintiffs must, but failed to, plead that "(1) the defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use[] proximately caused damage."  (*Id.* at 5:22-24 (quoting *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 842 (N.D. Cal. 2017) (citation omitted)).)  Plaintiffs' allegations in the SAC fall short yet again.[5]

### 1.    Plaintiffs Authorized 2FA for Their Apple ID.

As in the FAC, in the SAC "Plaintiffs do not allege facts to indicate that Plaintiffs failed to authorize the enablement of 2FA."  (Order at 6:11-12.)  The SAC lists the same three methods of enabling 2FA for a user's Apple ID identified in the FAC: (1) turn on 2FA for Apple ID in Settings; (2) install a software update that prompts the user to enable 2FA for their Apple ID; or (3) create an Apple ID with 2FA.  (SAC ¶ 35.)  The Court found that "[n]one of those means to enable 2FA permits Apple to enable 2FA unilaterally and without Plaintiffs' authorization."  (Order at 6:14-15.)  Nothing in the SAC alters the Court's conclusion.

---

[5] To survive a pleading challenge, Plaintiffs' "alternative" claims under the law of each Plaintiff's respective state of residence require the same factual allegations as a claim under California law.  They thus fail for the same reasons described *infra*.  *See Rosemont Taxicab Co., Inc. v. Philadelphia Parking Auth.*, 327 F. Supp. 3d 803, 829 (E.D. Pa. 2018) ("A trespass to a chattel may be committed by intentionally: (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another" but "[o]ne who commits a trespass to a chattel is subject to liability . . . only if (a) he dispossesses the other of the chattel, or (b) the chattel is impaired as to its condition, quality, or value, or (c) the possessor is deprived of the use of the chattel for a substantial time, or (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest." (citation omitted)); *CompuServe, Inc. v. Cyber Promotions, Inc.*, 962 F. Supp. 1015, 1021-22 (S.D. Ohio 1997) (same); *DHI Grp., Inc. v. Kent*, No. CV H-16-1670, 2017 WL 8794877, at *5 (S.D. Tex. Apr. 21, 2017), *report and recommendation adopted*, No. CV H-16-1670, 2017 WL 4837730 (S.D. Tex. Oct. 26, 2017) ("Trespass to chattels is the wrongful interference with the possession or use of property . . . accompanied by actual damage to the property or deprives the owner of its use for a substantial period of time." (citation omitted)); *Mount v. PulsePoint, Inc.*, No. 13 CIV. 6592 (NRB), 2016 WL 5080131, at *9 (S.D.N.Y. Aug. 17, 2016), *aff'd*, 684 F. App'x. 32 (2d Cir. 2017), as amended (May 3, 2017) (trespass to chattels requires a plaintiff to "show that [the defendant] intentionally, and without justification or consent, physically interfered with the use and enjoyment of personal property in their possession, and that they were harmed thereby"); *US Fax Law Ctr., Inc. v. iHire, Inc.*, 374 F. Supp. 2d 924, 928 (D. Colo. 2005), *aff'd*, 476 F.3d 1112 (10th Cir. 2007) (trespass to chattels requires "an intentional interference with the possession or physical condition of a chattel in possession of another" and the defendant must have "impaired the condition, quality or value of a chattel, or deprived the possessor of a chattel of its use for a substantial time, or caused harm to a thing in which the possessor had a legally protected interest").

Only Plaintiffs Brodsky and Tracey allege how they "enabled 2FA for Apple ID"—through a voluntary software update.  (SAC ¶¶ 37-38.)  In an attempt to avoid the Court's holding that this method of enabling 2FA demonstrates Plaintiffs Brodsky and Tracey's authorization of 2FA (Order at 6:11-15), Plaintiffs now claim that users "cannot perform a software upgrade of the operating system without turning on 2FA" (SAC. ¶ 36).  This allegation fails to demonstrate that Plaintiffs Brodsky and Tracey's consent to the software upgrade did not extend to 2FA.  (*See* Order at 6:19-7:7.)  As before, Plaintiffs again fail to allege any facts about "whether Plaintiff Brodsky [or Plaintiff Tracey] read or reviewed the message that accompanied the update and whether the message disclosed that the update would enable 2FA."  (Order at 7:1-3.)  Additionally, Plaintiffs' claim is belied by the alleged Apple user comments Plaintiffs attach to the SAC, which reveal that users may choose to "skip" enabling 2FA with a software update.  (SAC, Ex. E at 57 (explaining that "when you go into the UI [User Interface] in those cases, you have to hit the 'skip' or 'not now' instead of taking the path Apple wants you to take [to enable 2FA]").)

The Court found that Plaintiffs Bishop and Schwartz failed to allege in the FAC that 2FA was enabled without their authorization because "neither Plaintiff Bishop nor Plaintiff Schwartz even specifies how they enabled 2FA."  (Order at 7:9-10.)  The Court's conclusion applies with equal force to the SAC: Plaintiffs Bishop, Schwartz, Richardson, and Kyslowsky cannot plausibly claim that they "did not consent to 2FA" while alleging in the same breath that they "do not remember when 2FA was enabled for them" or "how."  (SAC ¶¶ 39, 48-49.)  The Court need not accept Plaintiffs' repeated and unsupported assertions that they did not consent to enabling 2FA (*e.g.*, *id.* ¶ 39) as true.  (*See* Order at 7:5-7 (such "bald assertions" amount to a "legal conclusion not entitled to the presumption of truth") (citing *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).)

For similar reasons, Plaintiffs' attempt to establish that the continued operation of 2FA is "without authorization" does not save their claim.  Plaintiffs now purport to "revoke" their authorization for 2FA.  (SAC ¶ 65.)  But the only allegations in the SAC regarding the scope of Plaintiffs' authorization for 2FA is Plaintiffs' allegation that Apple sends an email notification

alerting Apple ID users that the period for disabling 2FA is limited to two weeks.  (*Id.* ¶ 61.)
Plaintiffs claim they do not recall this email (*id.* ¶ 62), but they plead no other allegations to
suggest that they did not consent to a permanent upgrade to the security of their Apple ID
accounts, as the Apple email provides.  Plaintiffs Brodsky and Tracey, the only plaintiffs who
recall how they enabled 2FA, again fail to offer any "information about the . . . software update[s]
that allegedly enabled 2FA on [their] phone[s], nor about whether Plaintiff[s] Brodsky [and
Tracey] read or reviewed the message that accompanied the update and whether the message
disclosed that the update would enable 2FA."  (Order at 6:27-7:3.)

Because Plaintiffs' allegations demonstrate that they voluntarily enabled 2FA as a
permanent security upgrade to their Apple ID accounts, Plaintiffs cannot state a claim for trespass
to chattels.  (*See* Order at 6:11-12 (dismissing trespass to chattels claim because "Plaintiffs do not
allege facts to indicate that Plaintiffs failed to authorize the enablement of 2FA")); *see also In re
Apple & ATTM Antitrust Litig.*, No. C 07-05152 JW, 2010 WL 3521965, at *7 (N.D. Cal. July 8,
2010), *vacated in part sub nom. on other grounds, In re Apple & AT & TM Antitrust Litig.*, 826 F.
Supp. 2d 1168 (N.D. Cal. 2011) (granting Apple's motion for summary judgment as to the
plaintiffs' trespass to chattels, CFAA, and CCCL claims because they voluntarily installed the
challenged software).

### 2.     Plaintiffs' Trespass to Chattels Claim Also Fails Because They Cannot Allege That 2FA Damaged Their Property.

The Court dismissed Plaintiffs' trespass claim in the FAC for the additional, independent
reason that "Plaintiffs failed to allege that Apple harmed Plaintiffs through 2FA."  (Order at
7:13.)  The Court explained that to sufficiently plead damages for digital trespass, a plaintiff must
allege "that the purported trespass: (1) caused physical damage to the personal property, (2)
impaired the condition, quality, or value of the personal property, or (3) deprived plaintiff of the
use of personal property for a substantial time."  (*Id.* at 7:18-20 (citation omitted)); *see Intel Corp.
v. Hamidi*, 30 Cal. 4th 1342, 1347 (2003) ("[U]nder California law the tort does not encompass,
and should not be extended to encompass, an electronic communication that neither damages the
recipient computer system nor impairs its functioning.").  Plaintiffs' third attempt to state a claim

1    shows that they cannot allege that Apple damaged their property through 2FA.

2                          **a.      The Alleged Temporary Delay 2FA Causes When**
                                  **Plaintiffs Log In to Their Apple IDs Is Insufficient to**
3                                **Establish Harm.**

4          The "harm" Plaintiffs claim Apple caused them through 2FA is that "[e]ach [Apple ID]

5    login process takes an additional estimated 2-5 or more minutes with 2FA."  (SAC ¶ 42; *see id.*

6    ¶ 43.)  Plaintiffs allege that their devices are "inaccessible" as a result of 2FA login for those

7    "intermittent periods of time."  (SAC ¶ 67.)  But the Court already determined that such minor

8    delays "do[] not impair the functioning of Plaintiffs' Apple devices or Apple IDs."  (Order at 8:4-

9    9 (citing *Engle v. Unified Life Ins. Co., Inc.*, No. 14-CV-1908-MMA (JLB), 2014 WL 12508347,

10   at *7 (S.D. Cal. Oct. 27, 2014) (concluding that impairment of devices for the "duration of a

11   phone call" did not qualify as harm sufficient to state a trespass to chattels claim)).)  Plaintiffs'

12   failure to allege any cognizable damage caused by Apple through 2FA warrants dismissal.  *See*

13   *Intel Corp.*, 30 Cal. 4th at 1357 ("[a] mere momentary or theoretical deprivation of use is not

14   sufficient" for a trespass to chattels claim) (citation omitted).

15                          **b.      Neither Apple nor 2FA Caused Plaintiffs the Harm They**
                                  **Allegedly Suffered From Their Temporary Inability to**
16                               **Log In With 2FA.**

17         Plaintiffs also allege that they are harmed when they lack access to the verification code

18   required to log in with 2FA because they are temporarily "locked out" from their Apple devices.

19   This purported harm does not save Plaintiffs' trespass to chattels claim, however, because it was

20   not caused by Apple through 2FA and is not *plausible*.  Even if it were both, Plaintiffs'

21   admittedly temporary inability to access their Apple devices does not constitute "damage" for

22   purposes of stating a trespass claim.

23         Plaintiffs generally allege that when they did not have access to the verification code

24   required to log in with 2FA, they are "constructively dispossessed" (SAC ¶ 44) and "locked out"

25   with "100% blocking of bandwidth and network access" (*id.* ¶ 45) of their Apple devices and

26   "face an account lockout that is . . . 100% denial of access to Apple Services and any Third-Party

27   Apps" (*id.* ¶ 46).  Moreover, their Apple devices allegedly "lose their functionality and turn into

28   essentially worthless bricks."  (*Id.* ¶ 44).  As Plaintiffs concede, however, 2FA is an *Apple ID*

login method that is **not** tied to a specific Apple device and does not affect a user's ability to unlock or log in to their Apple *device*. (*See id.* ¶¶ 40-41 (purporting to show images of using 2FA on *unlocked* Apple devices); *see also id.* ¶ 61 (2FA "significantly improves the security of your *Apple ID*") (emphasis added).) Plaintiffs' own allegations show that they could still use their *devices* even if they did not enter the appropriate 2FA code. Plaintiffs' claims that 2FA causes their phones to be completely inoperable when the 2FA verification code cannot be accessed is directly contradicted by Plaintiffs' own allegations. *See Twombly*, 550 U.S. at 570 (Rule 8 requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face").

Moreover, Apple did not cause any of this implausible harm—Plaintiffs' independent inability to access the verification code required for 2FA caused it. *See Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1566 (1996) (holding that a trespass to chattels occurs only where the interference "has proximately caused injury"); (*accord* Order at 8:20-22). To start, Plaintiffs Bishop and Schwartz again allege that they lost access to their trusted devices due to events outside of their control and, as a result, were temporarily locked out of their Apple IDs. (*Id.* ¶¶ 48-49.) The Court previously concluded that "[i]n neither instance did Apple or 2FA cause Plaintiffs' dispossession from their Apple devices and Apple services." (Order at 8:19-20.) Plaintiffs Bishop and Schwartz do not allege any new facts in the SAC demonstrating otherwise.

The Court's conclusion applies equally to Plaintiffs' purported inability to access their Apple devices, Apple services, and third-party apps when they cannot obtain the 2FA verification code. Plaintiffs' allegations make clear that the lack of access is caused by *their* independent lack of internet connection or access to their trusted devices, not any actions by *Apple*. Plaintiff Richardson alleges that he "was locked out of [sic] when he could not recollect offhand his password" and, as a result, allegedly paid to install new (and unspecified) hardware on his Mac. (*Id.* ¶ 50.) Plaintiff Richardson's complaint appears to be related to his inability to recall his own chosen *device* passcode or account password, **not** the 2FA verification code. In any event, Apple did not cause him to be locked out of his devices or to pay to install new hardware; his failure to

1    remember his own "password" caused any "harm" he suffered.[6]

2         Additionally, the purported harm Plaintiffs experienced when they were unable to access

3    the 2FA verification code for reasons outside of Apple's control are "plainly insufficient to allege

4    the requisite showing of harm." (Order at 7:23-24.) Plaintiffs nowhere allege that they

5    permanently lost use of their Apple devices or services or that their devices did not function

6    properly once Plaintiffs regained access to their Apple ID accounts. *See In re Apple & ATTM*

7    *Antitrust Litig.*, 2010 WL 3521965, at *6 (noting that while the "loss of use of commercial email

8    servers in a large corporation for a 'substantial' or 'measurable' amount of time could constitute

9    an injury for the purpose of trespass to chattels, that factual circumstance stands in sharp contrast

10   to loss of use of a personal phone for a few days"). Invoking such phrases as "constructively

11   dispossessed," "locked out," "100% blocking," and "100% denial of access" does not alone

12   demonstrate—as is required—that Plaintiffs experienced "physical damage," "impair[ment] [of]

13   the condition, quality, or value," or a substantial "deprivation . . . of the use" of their Apple

14   devices and services. (Order at 7:18-20; *see id.* at 8:9-11 (merely parroting the language of

15   *Hamidi* is insufficient to state a trespass to chattels claim).)

16        Plaintiffs "fail[ed] to cure the deficiencies" identified in the Court's Order dismissing the

17   FAC. The Court should therefore dismiss Plaintiffs' trespass to chattels claim with prejudice.

18   (*See id.* at 20:24-27.)

19                    **C.    Plaintiffs Again Fail to State a Wiretap Claim Under CIPA.**

20        The Court dismissed Plaintiffs' CIPA claim in the FAC because Apple was a party to the

21   alleged "communications" and Plaintiffs failed to allege the contents of any intercepted

22   communication. (Order at 10:12-17.) None of the new allegations in the SAC save Plaintiffs'

23   CIPA claim, which requires Plaintiffs to allege that Apple (1) "by means of any machine,

24   instrument, or contrivance, or in any other manner" (2) "willfully and *without the consent* of all

25   parties to the communication, or in *any unauthorized manner*" (3) "reads, or attempts to read, or

26

27        ─────────────────
          [6] Moreover, Plaintiff Richardson cites to Exhibit B to demonstrate that he "also paid

28   subscriptions even during account lockout periods," (SAC ¶ 26), but the receipt shown is for the
     one-time purchase of a music video, not any recurring subscription service, (*id.* Ex. B).

to learn the *contents or meaning* of any message, report, or communication" (4) while the communication is "in transit."  Cal. Penal Code § 631(a) (emphasis added).

*First*, Plaintiffs have again "failed to [plausibly] allege that via 2FA, Apple was a third party that intercepted Plaintiffs' communications with another entity."  (Order at 10:12-14.)  In analyzing Plaintiffs' CIPA claim in the FAC, the Court explained that "Apple cannot intercept communications to which Apple is already a party."  (*Id.* at 10:3-4.)  Plaintiffs now implausibly claim that their "access" to third-party apps are communications that Apple allegedly intercepts.  (SAC ¶ 103.)  But, "access" to an app is not a "communication" "in transit."  Plaintiffs' own allegations reveal that Apple is a party to the only "communications" alleged—requests for and receipt of 2FA codes.  Plaintiffs allege that their request to access third-party apps "triggers 2FA," causing Plaintiffs to "*communicate with Apple's 2FA Server* for authentication."  (*Id.* ¶¶ 53-54, 57 (emphasis added).)  Because Apple is a party to these communications in which Plaintiffs communicate with Apple's server, Plaintiffs' CIPA claim cannot stand.  *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d at 845 (section 631 prohibits only "*third party* access to ongoing communications") (citation omitted) (emphasis in original).

*Second*, Plaintiffs cannot establish a CIPA claim because a communication must be intercepted in an "unauthorized manner" to satisfy the statute's requirements.  Cal. Penal Code § 631(a).  As discussed in Section IV.B.1, *supra*, and Section IV.D.1, *infra*, each and every Plaintiff authorized Apple to enable 2FA (and cannot unilaterally revoke that authorization now), and thus authorized any communications Apple allegedly intercepted during the 2FA process.

*Third*, as in the FAC, Plaintiffs again "fail[] to identify the contents of any communication that Apple allegedly intercepted, as required to state a claim under the CIPA."  (Order at 10:16-17.)  The Court explained that "contents" includes "any information concerning the substance, purport, or meaning of that communication," but not "record information regarding the characteristics of the message that is generated in the course of the communication."  (*Id.* at 10:21-24 (quoting 18 U.S.C. § 2510; *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)).)  Plaintiffs' new allegations that "Apple tracks Plaintiffs request, which particular Third-Party App is requested, frequency of invoking that Third-Party App compared to an equivalent

Apple Product and any other associated content with the Third-Party App" reflects nothing more than "record information" regarding Plaintiffs' login activities that cannot form the basis of a valid CIPA claim.  (SAC ¶ 103; *see id.* ¶ 51.)

*Fourth*, Plaintiffs allege no facts establishing that any "interception" occurred while the communication was "in transit."  *Quigley v. Yelp, Inc.*, No. 17-CV-03771-RS, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018) (dismissing CIPA section 631 claim because plaintiff "has not alleged facts giving rise to an inference that his communications were intercepted while 'in transit'").  Plaintiffs allege that Apple "uses its 2FA to intercept content, such as photos, music and other files on Apple devices stored locally" (SAC ¶ 51), but such files could not have been "in transit" because Plaintiffs admit they were "stored."  *See Quigley*, 2018 WL 7204066, at *4 ("An 'interception' only occurs if communications are 'acquired during transmission, not while [ ] in electronic storage.'" (quoting *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002))).  Moreover, Plaintiffs do not plausibly allege how 2FA, a process for logging into one's Apple ID, intercepts "locally stored" content.  (*See* SAC ¶ 3 (2FA is a procedure for "logging in").)  Plaintiffs' CIPA claim therefore fails on this ground as well.

Accordingly, the Court should dismiss Plaintiffs' CIPA claim with prejudice because it presents the same deficiencies previously identified by the Court.  (*See* Order at 20:24-25.)

**D.     The Court Should Dismiss Plaintiffs' CFAA Claim With Prejudice.**

The Court dismissed Plaintiffs' CFAA claim in the FAC because Plaintiffs "failed to plead that (1) Apple hacked into Plaintiffs' devices without authorization; and (2) any Apple actions caused $5,000 in damages in any given one-year period."  (Order at 12:16-18.)  The Court explained that "the en banc Ninth Circuit has favored an interpretation of the statute that 'maintains the CFAA's focus on hacking rather than turning it into a sweeping Internet-policing mandate.'"  (*Id.* at 12:10-12 (quoting *US v. Nosal (Nosal I)*, 676 F.3d 854, 858 (9th Cir. 2012) (en banc)).)  As a result, the Court warned Plaintiffs that it is "exceedingly skeptical of Plaintiffs' theory that 2FA—an Apple login method that according to Plaintiff's FAC 'significantly improves the security of [a user's] Apple ID'—can render Apple liable under the CFAA."  (Order at 12:12-15.)  This is because "[a]t base, Plaintiffs' FAC alleges a claim that 2FA slows down the

1   login process, not a hacking claim."  (Order at 14:1-2.)

2          Plaintiffs' allegations about 2FA in the SAC demonstrate that the Court's skepticism was

3   well-founded.  Plaintiffs still do not allege a viable hacking claim under the CFAA, and therefore

4   the Court should dismiss Plaintiffs' CFAA claim with prejudice.

5                    **1.      Plaintiffs Fail to Allege Any "*Access*" By Apple That Was**
                             **"Without Authorization" or "Exceeded Authorization."**
6

7          The CFAA prohibits "access" that is either "without authorization" or "exceeds

8   authorization."  18 U.S.C. § 1030.  The statute limits *who* has access, not *how* they complete that

9   access.  *hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1113 (N.D. Cal. 2017), *aff'd and*

10  *remanded*, 938 F.3d 985 (9th Cir. Sept. 9, 2019).  Thus, if a computer owner authorized an

11  individual to access the owner's computer, the owner cannot state a claim against that individual

12  under the CFAA based on *how* the individual accesses the computer.  (*See* Order at 12:22-24

13  (quoting *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016)).)  As in the

14  FAC, Plaintiffs again fail to allege that any "access" was "without authorization" or "exceed[ed]

15  authorization."

16         To start, as the Court explained, "a user would have 'serious difficulty' pleading a CFAA

17  violation based on the voluntary installation of software."  (Order at 13:3-4 (quoting *In re iPhone*

18  *Application Litig.*, 844 F. Supp. 2d 1040, 1066 (N.D. Cal. 2012)).  But that is exactly what

19  Plaintiffs Brodsky and Tracey allege here (SAC ¶¶ 37-38), and the remaining Plaintiffs otherwise

20  permitted the alleged "access" to their devices by consenting to 2FA (*see supra* Section IV.B.1).

21  Thus, the Court's previous finding that Plaintiffs "concede that [they] voluntarily installed the

22  software update that enabled 2FA," and "[o]n that ground alone, Plaintiffs' CFAA claim fails"

23  holds true in the SAC.  (Order at 13:1-3.)  Nor do Plaintiffs plausibly allege that they revoked

24  Apple's access to their devices to operate Apple ID or "receive Plaintiffs' login activities."

25  (Order at 13:12-13.)  Plaintiffs newly pronounce in the SAC that they "revoke" Apple's

26  "authorization" "to operate 2FA on Apple Devices."  (SAC ¶ 65.)  As explained above, however,

27  Plaintiffs did not act within the alleged two-week window provided to disable 2FA before it

28  became the permanent level of account security for their Apple IDs.  (*See supra* Section IV.B.1.)

Moreover, Plaintiffs' purported revocation of authorization does not limit Apple's *access*, only the *manner* of access, and thus cannot give rise to a CFAA claim. *See Ticketmaster L.L.C. v. Prestige Entm't, Inc.*, 306 F. Supp. 3d 1164, 1176-77 (C.D. Cal. 2018) (granting motion to dismiss CFAA and CCCL claims because Ticketmaster "never withdrew" authorization to *access* its website where "Ticketmaster's cease-and-desist letter only expressed its disapproval of the *method* by which Defendants accessed the website" (emphasis added)). "'[A]uthorization,' as used in [the CFAA], is most naturally read in reference to the *identity* of the person accessing the computer or website, not *how* access occurs." *hiQ Labs, Inc.*, 273 F. Supp. 3d at 1113 (emphasis in original). Plaintiffs only purport to revoke Apple's authorization for 2FA. They do not disclaim other methods of logging into Apple ID, including through verification of a chosen password. (*See* Order at 13:13-15 ("Plaintiffs also do not explain how Apple's access to Plaintiffs' 'login activities' via 2FA is at all different from Apple's access to such login activities when Plaintiffs employ a different Apple ID login method."); *id.* at 10:10-11 ("[O]ther Apple ID login methods presumably also require Plaintiffs to communicate with Apple's servers.").) By "revoking" consent only as to 2FA, Plaintiffs attempt to limit the *manner* in which Apple accesses Plaintiffs' devices through Apple ID login and their login activities. The CFAA, however, does not make actionable *how* an individual completes access, so long as the access is authorized, as it is here. *See hiQ Labs, Inc.*, 273 F. Supp. 3d at 1113; *cf. Power Ventures*, 844 F.3d at 1069 (the defendant violated the CFAA and CCCL because Facebook "clearly notified Power of the revocation of *access*, and Power intentionally and admittedly refused to comply" even after Facebook imposed IP blocks to prevent Power's access to its website (emphasis added)).

Plaintiffs also fail to allege that Apple has "exceed[ed]" Plaintiffs' "authorization" to access their Apple ID or devices. 18 U.S.C. § 1030. The Court rejected Plaintiffs' attempt to allege an "exceeds authorization" CFAA claim in the FAC because "Plaintiffs d[id] not allege any facts related to the *scope* of Plaintiff Brodsky's authorization when he downloaded the software update, such as that Plaintiff Brodsky authorized Apple to access his Apple ID and device for all purposes except for 2FA, or that Apple hid information about 2FA in the message

that accompanied the software update." (Order at 13:15-19 (emphasis added).)  Except for the

Apple email disclosing the two-week period to disable 2FA, the SAC is again devoid of any

allegations describing the scope of Plaintiffs' initial enablement of 2FA.  Indeed, four Plaintiffs

do not even recall how they enabled 2FA.  (SAC ¶ 39.)  Plaintiffs therefore fail to sufficiently

allege that Apple used its authorized "access to obtain or alter information in the computer that

the accesser is not entitled so to obtain or alter."  18 U.S.C. § 1030(e)(6) (defining "exceeds

authorized access").

### 2. Plaintiffs Again Fail to Allege the Required $5,000 in Damages.

Plaintiffs' repeated failure to plead that Apple caused at least $5,000 in damage is by itself

cause for dismissal of their CFAA claim.  *See* 18 U.S.C. §§ 1030(a)(2)(C), (a)(4), (g).  In the

SAC, Plaintiffs add allegations regarding the cost of their Apple devices and subscriptions to

Apple services and third-party apps (SAC ¶¶ 17-34), ultimately asserting that "Apple's

interference has diminished the access of these for an aggregated loss and damage of at least

$5,000 during a one-year period" (*id.* ¶ 125).  These new allegations still do not amount to a

sufficient showing of the required loss.

*First*, Plaintiffs cannot rely on the alleged full cost of their Apple products and services

and third-party apps to satisfy the CFAA's statutory damage threshold because Plaintiffs do not

allege a *permanent* loss of any device, service, or application.  *See In re Apple & ATTM Antitrust

Litig.*, 2010 WL 3521965, at *6 (finding that plaintiffs "have not shown actual harm by loss of

use of their phones" for a temporary period).  At most, Plaintiffs have only experienced minor

delays in accessing their Apple products and services and third-party apps due to 2FA, but they

do not allege specifically how long any temporary inaccessibility lasted, which services or apps

were inaccessible at the time of any "lock out," or the cost of that temporary inaccessibility.

*Second*, apart from the alleged two to five minutes required to log in with 2FA, the

temporary loss of access Plaintiffs allege was caused by Plaintiffs Bishop and Schwartz's loss of

their trusted devices, Plaintiff Richardson's forgetting of his own chosen password, or Plaintiffs'

lack of internet access or otherwise not having access to their trusted devices—not Apple or 2FA.

(*See supra*, Section IV.B.2.b.)  Because "Plaintiffs do not allege that Apple or 2FA led Plaintiffs

1    to lose access to their trusted devices," forget their passwords, or otherwise be unable to access

2    the verification code required for 2FA, none of the allegedly associated damages can be plausibly

3    attributed to Apple or 2FA.  (Order at 8:15-16.)

4         *Third*, Plaintiffs' conclusory allegations that "Apple has collected personal information

5    that has economic value," the collection of which allegedly resulted in "economic loss with an

6    aggregated value of at least $5,000 during a one-year period," was insufficient to save the FAC

7    and fails again here.  (SAC ¶ 126; *see* Order at 14:4-6.)  The only personal information Plaintiffs

8    purport to identify is that Apple allegedly "tracks Third-Party App requests to get competitive

9    information on products."  (SAC ¶ 58.)  These bald allegations are insufficient to state a CFAA

10   claim because Plaintiffs have "failed to allege facts that demonstrate that [they were]

11   economically harmed" by Apple's alleged practices or how Plaintiffs were "foreclosed from

12   capitalizing on the value of [their] personal data."  *Low v. LinkedIn Corp.*, No. 11-CV-01468-

13   LHK, 2011 WL 5509848, at *5 (N.D. Cal. Nov. 11, 2011) (granting motion to dismiss for lack of

14   standing).  Although *Low* did not include a CFAA claim, the Court looked to cases involving the

15   CFAA to conclude that the "unauthorized collection of personal information does not create an

16   economic loss."  *Id.* at *4.

17        Even if Plaintiffs could plausibly allege that they missed out on commodifying this

18   information—which they cannot—"the CFAA is 'an anti-hacking statute,' not 'an expansive

19   misappropriation statute.'"  *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1263 (9th Cir.

20   2019) (quoting *Nosal I*, 676 F.3d at 857)).  In *Andrews*, the Ninth Circuit affirmed the district

21   court's denial of leave to amend the complaint to add a CFAA claim based on futility because the

22   plaintiff's "theory of loss . . . that he and his fellow class members were denied the profits they

23   might have received from commodifying the personal information that Sirius XM allegedly

24   obtained through unlawful means" was not a cognizable loss under the CFAA.  *Id.* at 1262-63.

25   That is because the "revenue lost" in the CFAA's definition of "loss" "refers *only* to losses that

26   occurred 'because of interruption of service.'"  *Id.* (quoting 18 U.S.C. § 1030(e)(11) (emphasis in

27   original)).  Similarly, Plaintiffs cannot connect Apple's alleged collection of "personal

28   information that has economic value" to a loss because of interruption of service.  (SAC ¶ 126.)

1   Therefore, Plaintiffs fail to allege a viable CFAA claim based on this theory of loss.

2        Since Plaintiffs fail to allege damages of at least $5,000 and fail to cure the deficiencies

3   pointed out in the Court's prior order, the Court should dismiss this claim with prejudice.  (Order

4   at 20:24-25.)

5                    **E.    Plaintiffs' CCCL Claim Fails.**

6        "Case law suggests that Plaintiffs' CCCL claims rise or fall with Plaintiffs' CFAA claims

7   because 'the necessary elements of Section 502 do not differ materially from the necessary

8   elements of the CFAA,' except in terms of damages."  (Order at 14:26-15:2 (quoting *Multiven,*

9   *Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 895 (N.D. Cal. 2010)).)  Like the CFAA, the CCCL

10  prohibits "unauthorized access."  *See* Cal. Penal Code § 502(a) ("It is the intent of the Legislature

11  in enacting this section to expand the degree of protection afforded to individuals . . . from

12  tampering, interference, damage, and unauthorized *access* to lawfully created computer data and

13  computer systems.") (emphasis added).  Plaintiffs' CCCL claim fails for two reasons: (1) Apple

14  enabled 2FA with Plaintiffs' permission; and (2) Plaintiffs' boilerplate allegations are insufficient

15  to state a claim under Federal Rule of Civil Procedure 8.

16                **1.    Plaintiffs Permitted Any Alleged Access by Apple Through
                            2FA.**

17

18        Plaintiffs' CCCL claim fares no better in the SAC:  it cannot survive because Plaintiffs

19  permitted Apple to enable 2FA.  As the Court explained, "the CCCL prohibits only access or

20  disruptions to a computer systems that are 'without permission.'"  (Order at 15:5-6.)  As such, "a

21  plaintiff must allege that the offending software was 'designed in such a way to render ineffective

22  any barriers the Plaintiffs must wish to use to prevent access' to their information."  (*Id.* at 15:6-8

23  (quoting *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1101 (N.D. Cal. 2015)).)  Yet, once again,

24  Plaintiffs allege no such "barriers" that Apple allegedly overcame to access Plaintiffs' devices.

25  Plaintiffs' decision to permanently enable 2FA (*see supra*, Sections IV.B.1, IV.D.1) defeats their

26  CCCL claim.  *See In re Apple & ATTM Antitrust Litig.*, 2010 WL 3521965, at *7 ("Voluntary

27  installation runs counter to . . . [the CCCL's] requirement that the act was 'without

28  permission.'").

1   The absence of barriers also distinguishes this case from those in which courts have found
2   CCCL violations.  For example, in *Power Ventures*, Power Ventures violated the CCCL when
3   Facebook blocked Power's IP address "in an effort to prevent Power from accessing the
4   Facebook website," but Power "responded by switching IP addresses to circumvent the Facebook
5   block."  *Power Ventures*, 844 F.3d at 1063.  Here, far from erecting barriers, Plaintiffs do not
6   challenge Apple's authorization to access their devices to manage Plaintiffs' login activities
7   through Apple ID; Plaintiffs purport to challenge only the specific security method used by
8   Apple.  (*See supra* Sections IV.B.1, IV.D.1); *see also Oracle USA, Inc. v. Rimini St., Inc.*, 879
9   F.3d 948, 962 (9th Cir. 2018), *rev'd in part on other grounds*, 139 S. Ct. 873 (2019) ("We hold
10  that taking data using a *method* prohibited by the applicable terms of use, when the taking itself
11  generally is permitted, does not violate the [CCCL].") (emphasis in original).  The Court should
12  therefore dismiss Plaintiffs' CCCL claim with prejudice.

### 2.  Plaintiffs Failed to Cure Their Deficient Allegations Regarding the Other Required Elements of Their CCCL Claim.

15  The Court also dismissed Plaintiffs' CCCL claim in the FAC because "Plaintiffs' specific
16  CCCL claims all merely parrot the language of the CCCL," and such "boilerplate allegations also
17  provide a reason to dismiss Plaintiffs' CCCL claims."  (Order at 15:23, 16:6-7 (citing *Gonzales v.
18  Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018) ("These boilerplates allegations
19  do not survive Rule 8.")).)  Plaintiffs' specific CCCL claims in the SAC are *identical* to the FAC;
20  therefore, they should be dismissed on the same basis.  (*See id.*)  Plaintiffs made no effort to cure
21  this deficiency identified by the Court, and thus the Court should dismiss Plaintiffs' CCCL claim
22  without leave to amend.  (Order 20:24-25.)

### F.  The Court Should Dismiss Plaintiffs' Unjust Enrichment Claim With Prejudice.

25  The Court dismissed Plaintiffs' unjust enrichment claim in the FAC on the basis that
26  California does not recognize a separate cause of action for unjust enrichment.  (Order at 16:15-
27  20.)  It explained that courts have sometimes "construed purported claims for unjust enrichment
28  as quasi-contract claims seeking restitution" where the claim "seeks 'to prevent unjust enrichment

1  in the absence of a true contract or where the contract was obtained by fraud.'" (*Id.* at 16: 21-26

2  (quoting *Fowler v. Wells Fargo Bank, N.A.*, No. 17-cv-02092-HSG, 2017 WL 3977385, at *5

3  (N.D. Cal. Sept. 11, 2017)); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir.

4  2015).)  It also noted that "courts have approved quasi-contract claims premised on false and

5  misleading labels." (*Id.* at 17:1-2.)

6          As in the FAC, Plaintiffs' SAC fails to include any viable allegations "that Apple is liable

7  in quasi-contract or that 2FA was somehow mislabeled." (*Id.* at 17:4-5.)  Plaintiffs claim that

8  "Apple is liable under quasi-contract claim seeking restitution," but then allege in the same breath

9  that they "have a *contract* with Apple pursuant to the Terms of Use of Apple Devices and

10  Services that is breached by Apple's interference as alleged . . . ." (SAC ¶ 131 (emphasis added);

11  *see id.* ¶¶ 15, 76.)  Plaintiffs cannot have it both ways.  There can be no unjust enrichment or

12  quasi-contract claim where an express contract governs the subject at issue, as Plaintiffs allege

13  here.[7] (*See* Order at 16:24-17:1 (quasi-contract cause of action seeks to prevent unjust

14  enrichment when there is no relevant contract)); *Mandani v. Volkswagen Grp. of Am., Inc.*, No.

15  17-CV-07287-HSG, 2019 WL 652867, at *9 (N.D. Cal. Feb. 15, 2019) (dismissing unjust

16  enrichment claim where express warranty covered allegedly defective transmission because

17  "actions in quasi-contract cannot lie when an express contract between the same parties governs

18  the subject matter in question"); *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388

19  (2012) ("A plaintiff may not, however, pursue or recover on a quasi-contract claim if the parties

20  have an enforceable agreement regarding a particular subject matter.").

21

22          [7] Plaintiffs' "alternative claims" under New York, Ohio, Pennsylvania, Colorado, and
Texas law fail for the same reason. *See IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12

23  N.Y.3d 132, 142 (2009) ("Where the parties executed a valid and enforceable written contract
governing a particular subject matter, recovery on a theory of unjust enrichment for events arising

24  out of that subject matter is ordinarily precluded[.]"); *Wuliger v. Manufacturers Life Ins. Co.
(USA)*, 567 F.3d 787, 799 (6th Cir. 2009) ("[A] plaintiff may not recover under the theory

25  of unjust enrichment or quasi-contract when an express contract covers the same subject."
(citation omitted)); *Lackner v. Glosser*, 892 A.2d 21, 34 (Penn. Sup. Ct. 2006) ("[T]he doctrine of

26  quasicontract, or unjust enrichment, is inapplicable where a written or express contract exists."
(citation omitted)); *Interbank Investments, LLC. v. Eagle River Water & Sanitation Distr.*, 77

27  P.3d 814, 816 (Colo. Ct. App. 2003) ("[A] party cannot recover for unjust enrichment by
asserting a quasi-contract when an express contract covers the same subject matter [.]"); *Coghlan*

28  *v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2011) (unjust enrichment "unavailable
when a valid, express contract governing . . . the dispute exists.").

1    Even if Plaintiffs had not alleged that an agreement governs the subject of their dispute,

2    they still fail to state a quasi-contract claim because they do not allege that Apple "has been

3    unjustly conferred a benefit through mistake, fraud, coercion, or request." *Astiana*, 783 F.3d at

4    762 (citation omitted).  As Plaintiffs *authorized* Apple to enable 2FA (*supra* Section IV.B.1),

5    Apple has not unjustly obtained any benefits from 2FA.  Moreover, the only purported benefit

6    that Apple obtained from Plaintiffs' use of 2FA—"information regarding online communications

7    and activities of Plaintiffs" (SAC ¶ 132)—is not one Plaintiffs seek to have returned.  *See*

8    *Astiana*, 783 F.3d at 762 (quasi-contract seeks the return of an unjustly conferred benefit).

9    Finally, this claim also fails as to Plaintiff Brodsky and the putative class because it is

10   barred by the applicable two-year statute of limitations.  *See Huluwazu v. Snyder*, No. 17-CV-

11   03386-LHK, 2017 WL 5991865, at *5 (N.D. Cal. Dec. 4, 2017) ("[a]n unjust enrichment cause of

12   action would typically be covered by the two-year limitations" of California Code of Civil

13   Procedure § 339(1)).  Plaintiff Brodsky enabled 2FA for his Apple ID through a software update

14   in September 2015, and Plaintiffs' proposed class period "began when Apple introduced 2FA in

15   2015."  (SAC ¶¶ 37, 70.)  Given that Plaintiffs filed this action in February 2019, Plaintiff

16   Brodsky and the class's unjust enrichment claims are time-barred and should therefore be

17   dismissed.  *See Huluwazu*, 2017 WL 5991865, at *5 (dismissing unjust enrichment claim asserted

18   outside of the two-year statute of limitations period as untimely).

19   Plaintiffs did not remedy the deficiencies with their unjust enrichment claim that the Court

20   identified, and therefore the Court should dismiss this claim with prejudice.  (Order at 20:24-25.)

21   **V.    CONCLUSION**

22   For the foregoing reasons, Apple respectfully requests that the Court dismiss Plaintiffs'

23   entire SAC.  Because Plaintiffs failed to cure the deficiencies identified in the Court's Order

24   dismissing the FAC and Apple's Motion to Dismiss the FAC, Apple requests that the Court

25   dismiss the SAC with prejudice.

26

27

28

Dated:  October 22, 2019                    MORRISON & FOERSTER LLP


                                            By:  */s/ Tiffany Cheung*
                                                 Tiffany Cheung

                                                 Attorneys for Defendant
                                                 APPLE INC.